689 So.2d 290 (1997)
AMERICAN RELIANCE INSURANCE COMPANY, Appellant,
v.
Andres P. PEREZ and Basita Perez, individually and on behalf of all others similarly situated, Appellees.
No. 95-3415.
District Court of Appeal of Florida, Third District.
January 8, 1997.
Rehearing Denied March 19, 1997.
Bennell, Woulfe, Kirschbaum, Keller & McIntyre and Nancy W. Gregoire and D. David Keller, Ft. Lauderdale, for appellant.
Lidsky & Vaccaro, Hialeah; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel S. Perwin, Miami, for appellees.
Vincent J. Rio, III and Mark K. Delegal, Tallahassee and Marcy J. Levine, Miami, for State Farm Fire & Casualty Company as amicus curiae.
John P. Joy for Aetna Casualty and Surety Company as amicus curiae.
Before GERSTEN, GREEN and FLETCHER, JJ.
FLETCHER, Judge.
American Reliance Insurance Company [insurer] appeals a partial summary judgment on liability in favor of its insureds, Andres and Basita Perez. We reverse and remand for further proceedings.
Following Hurricane Andrew, the insureds made a claim for damage to their home pursuant to their policy which provided that coverage is limited to "actual cash value" of the damage unless actual repair and replacement is completed. If the damage is repaired or replaced, the policy provides that coverage is at "replacement cost without deduction for depreciation." Basically the dispute between insurer and insureds revolves around the meaning of "actual cash value."
The insurer concluded that the cost to replace the portion of the house damaged by the storm was $5,421.00. The insureds decided, however, not to repair or replace the damaged portion, but rather to be compensated for their loss. To do this they proceeded with their claim under a section of their policy which provides:
"You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make a claim within 180 days after loss for any additional liability on a replacement cost basis."
An insured making a claim pursuant to this language is entitled to "actual cash value" *291 (whatever that is) if she or he does not repair or replace the damage, or is entitled to an additional sum, up to the "replacement cost," if repair or replacement is later made within 180 days after the loss. Payment on a replacement cost basis is thus expected to be more than payment on an actual cash value basiswhich, as shall be seen, is the case.
Upon reviewing the claim, the insurer then paid $4,292.00, representing the cost of replacement less an amount ($1,128.00) for prior depreciation in value of the damaged portion. The insureds objected to the reduction for depreciation and filed suit individually and as a class action on behalf of all other Florida insureds who had depreciation deducted from their actual cash value settlements. Concluding that depreciation was not deductible, the trial court granted partial summary judgment in favor of the insureds.
The insurer contends that the policy language is unambiguousthat when an insured elects not to repair or replace damage to the insured building, then the insured is entitled to be paid only "actual cash value," i.e., an amount less a deduction for prior depreciation, because the damaged portion, not being new, had suffered actual physical depreciation before the hurricane damage. On the other hand, the insureds contend that the language of the policy section under which they made their claim makes no mention of depreciation from actual cash value, therefore the unambiguous language requires that there be no depreciation deduction. Alternatively, the insureds argue that the controlling language is ambiguous because there is no definition of actual cash value in the policy and, being ambiguous, the language must be construed against the insurer and in favor of coverage.
We find that the controlling language is not ambiguous. The expression "actual cash value" is an often-used appraisal term, generally synonymous with "market value" or "fair market value."[1]See Black's Law Dictionary 53 (4th ed.1968); 4 Nichols on Eminent Domain § 12.01, at 12-9 to 12-23 (rev.3d ed.1996); 2 Words and Phrases, "Actual Cash Value" 332-38, 117-19 (1955 & Supp. 1996)(cases collected). Thus when the policy provides for "actual cash value" it means "fair market value," which appraisal term is uniformly defined as "the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied." City of Tampa v. Colgan, 121 Fla. 218, 230, 163 So. 577, 582 (1935); see 4 Nichols on Eminent Domain § 12.02[1], at 12-62 to 12-70 (rev.3d ed.1996).
All of this is well and good, of course, but in order to translate words into dollar amounts there must be mathematical formulae to consider, and, of course, there are. These are the "three well recognized guides to appraisal: (1) the cost approach; (2) the comparable sales and (3) the income or economic approach." E.g., McNayr v. Claughton, 198 So.2d 366, 368 (Fla. 3d DCA 1967). All three guides take into consideration the condition of the property, i.e., how much it has physically depreciated. Focusing on the cost approach to fair market value (actual cash value), it can readily be observed that an allowance for actual depreciation is mandated as the cost approach by definition is the consideration of cost minus depreciation. The consideration of cost alone (without actual depreciation) would result in a figure in excess of fair market value (actual cash value). See 5 Nichols on Eminent Domain § 20.01, at 20-2, § 20.04[1], at 20-13 (rev.3d ed.1996).
We observe then, that the purpose of the policy is either to compensate those insureds who elect not to repair or replace the damaged portion of their property by paying them fair market value (which inherently includes a deduction for depreciation) for the loss or damage they suffered, or, if repair or replacement is made, to compensate the insureds at cost without depreciation (as repair or replacement is to be made with new materials). By way of example, if an insured suffered the loss of a twenty-year-old swimming pool screen due to a hurricane, the insured could, under this policy language, *292 have a new screen made of new materials installed at no additional expense. Should the insured elect not to replace the lost screen, she or he would be compensated for the value of the screen (which, being twenty years old, is in a physically depreciated condition). The dollar amount of value, cost, and depreciation are all factors to be considered through accepted appraisal practices.
Having determined that the policy language requires the consideration of depreciation in arriving at "actual cash value," we reverse the partial summary judgment and remand for further proceedings in accordance herewith.
NOTES
[1] For a discussion by our Florida Supreme Court as to similar language equating to "fair market value" (in an ad valorem tax context), see Walter v. Schuler, 176 So.2d 81 (Fla.1965).