999 So.2d 684 (2008)
Chad GOFF and Carol Goff, Appellants,
v.
STATE FARM FLORIDA INSURANCE COMPANY, Appellee.
No. 2D07-3498.
District Court of Appeal of Florida, Second District.
December 12, 2008.
Rehearing Denied February 3, 2009.
*685 Raymond T. Elligett, Jr., of Buell & Elligett, P.A., Tampa; and Matthew R. Danahy of Danahy & Murray, P.A., Tampa, for Appellants.
*686 Elizabeth K. Russo of Russo Appellate Firm, P.A., Miami; and Butler, Pappas, Weihmuller, Katz, Craig, LLP, Tampa, for Appellee.
LaROSE, Judge.
Carol and Chad Goff, mother and son, appeal the trial court's final summary judgment in favor of State Farm Florida Insurance Company. We affirm, in part, and reverse, in part.
State Farm insured the Goffs' home. They filed a claim after their house sustained hurricane damage in late 2004. Under the policy, State Farm would pay actual cash value at the time of loss and would pay additional amounts for repair or replacement after the work was completed. Essentially, the policy is a replacement cost policy.[1] Thus, the Goffs can elect to receive only the actual cash value of repairs. Alternatively, if they wish to recover replacement costs, they must comply with the following policy provision:
SECTION ICONDITIONS
....
3. Loss Settlement. Covered property losses are settled as follows:
b. We will pay the cost to repair or replace buildings under Coverage A, subject to the following:
(1) until actual repair or replacement is completed, we will pay the actual cash value of the damage to the buildings, up to the policy limit, not to exceed the replacement cost of the damaged part of the buildings for equivalent construction and use on the same premises;
(2) you must make claim within 180 days after the loss for any additional payment on a replacement cost basis.
Any additional payment is limited to the amount you actually and necessarily spend to repair or replace the damaged buildings with equivalent construction and for equivalent use on the same premises.
In January 2005, State Farm paid the Goffs $4522.81 for the actual cash value of the damage, after subtracting a $500 deductible. At the Goffs' request, State Farm reinspected the property a month later but denied their claim for further monies. Thereafter, the Goffs retained a public adjuster, who estimated their total loss at $66,708. State Farm retained its own adjuster. Based on his January 2006 property inspection, State Farm paid the Goffs an additional $3108.76. State Farm paid roughly eleven percent of the Goffs' claimed loss.
In March 2006, the Goffs sued State Farm for breach of contract (count I), and for a judgment declaring State Farm liable for contractor overhead and profit as part of the actual cash value payable immediately upon loss (count II). The trial court granted State Farm's motion to compel an appraisal.[2] The resulting appraisal determined an actual cash value loss of $43,059.83, about six times the amount already paid by State Farm, computed by *687 subtracting depreciation from replacement cost:

 APPRAISAL AWARD
 Replacement Cost Depreciation Actual Cash Value
Dwelling 36,801.44 5292.88 31,508.56
Overhead 7070.29 1060.54 6009.75
& Profit
Personal 4426.90 885.38 3541.52
Property
Additional 2000.00 -0- 2000.00
Living Expenses
=====================================================================
NET TOTAL 50,298.63 7238.80 43,059.83
AWARD

The Goffs moved to confirm the appraisal award. Within sixty days, however, State Farm paid an additional $34,928.26, withholding the $7238.80 depreciation amount pending actual repairs. Because of this payment, the trial court refused to confirm the appraisal award; it did lift the litigation stay in effect during the appraisal process.
The Goffs then moved for summary judgment. They argued that their lawsuit compelled State Farm to pay significant additional amounts for the loss. According to the Goffs, this payment operated as a confession of judgment, entitling them to attorney's fees under section 627.428, Florida Statutes (2006). The Goffs also argued that State Farm wrongfully withheld $1060.58[3] in overhead and profit designated as depreciation.
State Farm also moved for summary judgment. It asserted that the lawsuit was unnecessary, it had complied with all policy terms, and the appraisal process, not the lawsuit, resolved any dispute. State Farm also maintained that it properly withheld payment of $1060.58 of overhead and profit.
The trial court denied the Goffs' motion but granted summary judgment in favor of State Farm. It ruled that State Farm did not breach the contract and that it did not have to pay the withheld overhead and profit amount until the Goffs made the repairs.

Count IBreach of Contract
Although State Farm paid most of the appraisal amount, the Goffs wanted a judgment against State Farm in order to secure attorney's fees under section 627.428.[4] After all, according to the Goffs, their lawsuit was the impetus for payment. State Farm disputes this. What the parties ignore, however, is that "[a]ctual rendition of an order or decree is not an absolute prerequisite to an insured's entitlement to attorney's fees under the statute." See Unterlack v. Westport Ins. Co., 901 So.2d 387, 389 (Fla. 4th DCA 2005) (citing Wollard v. Lloyd's & Cos. of Lloyd's, 439 So.2d 217, 218 (Fla.1983)); see § 627.428.[5]
*688 Section 627.428 "discourage[s] litigation and encourage[s] prompt disposition of valid insurance claims without litigation." Jerkins v. USF & G Specialty Ins. Co., 982 So.2d 15, 17 (Fla. 5th DCA 2008). Accordingly, "`the statute must be construed to authorize the award of an attorney's fee to an insured or beneficiary under a policy or contract of insurance who brings suit against the insurer after loss is payable even though technically no judgment for the loss claimed is thereafter entered favorable to the insured or beneficiary due to the insurer voluntarily paying the loss before such judgment can be rendered.'" Wollard, 439 So.2d at 218 (Fla. 1983) (quoting Cincinnati Ins. Co. v. Palmer, 297 So.2d 96, 99 (Fla. 4th DCA 1974)). "[W]here an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes the functional equivalent of a confession of judgment or verdict in favor of the insured, thereby entitling the insured to attorney's fees." Ivey v. Allstate Ins. Co., 774 So.2d 679, 684-85 (Fla.2000); First Floridian Auto & Home Ins. Co. v. Myrick, 969 So.2d 1121, 1124 (Fla. 2d DCA 2007) ("An insurer will owe attorney's fees to its insured where coverage is disputed and the insured prevails whether by judgment or a confession of judgment.") rev. denied, 980 So.2d 489 (Fla.2008); State Farm Fla. Ins. Co. v. Lorenzo, 969 So.2d 393, 397 (Fla. 5th DCA 2007) (stating that confession of judgment doctrine "applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in the insurer's change of heart and payment before judgment.").
Jerkins is instructive. The Jerkinses sued for payment of their hurricane damage claim. Jerkins, 982 So.2d at 16. The trial court abated the suit pending appraisal. Id. The insurer paid the appraisal award, and the Jerkinses sought attorney's fees under section 627.428. The insurer argued that fees were inappropriate because the dispute was resolved by appraisal rather than litigation. Jerkins, 982 So.2d at 16. The trial court denied the fee motion. Id. The Fifth District reversed, holding that payment of the appraisal award acted as a "confession of judgment," entitling the Jerkinses to attorney's fees. Id. at 17.
As the insurer in Jerkins, State Farm requested an appraisal only after the Goffs sued. The Goffs are entitled to section 627.428 attorney's fees because their lawsuit forced State Farm to request an appraisal and to pay significant additional amounts. See Myrick, 969 So.2d at 1123-24 (affirming attorney's fees award where insurer paid appraisal award after suit was filed because filing of suit resulted in payment of substantial additional funds); Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP, 900 So.2d 676, 679 (Fla. 4th DCA 2005); Ajmechet v. United Auto. Ins. Co., 790 So.2d 575, 576 (Fla. 3d DCA 2001); compare with Federated Nat'l Ins. Co. v. Esposito, 937 So.2d 199, 201-02 (Fla. 4th DCA 2006) (holding insureds not entitled to fees where insurer had already initiated appraisal process when insured filed suit); Lorenzo, 969 So.2d at 397-98 (holding confession of judgment doctrine did not apply where insureds were not forced to sue to receive benefits). State Farm's payment of the appraisal award entitled the Goffs to section 627.428 attorney's fees. The trial court erred in granting summary judgment to State Farm on count I. Therefore, we reverse on this issue.

*689 Count IIContractor's Overhead and Profit

Whether State Farm wrongfully withheld $1060.58 of overhead and profit as depreciation depends on the scope of "actual cash value." The policy leaves the term undefined, but the lack of definition poses no insoluble problem. See Am. Reliance Ins. Co. v. Perez, 689 So.2d 290, 291 (Fla. 3d DCA 1997). "`[A]ctual cash value' is an often-used appraisal term, generally synonymous with `market value' or `fair market value.'" Id. (citing Black's Law Dictionary 53 (4th ed. 1968); 4 Nichols on Eminent Domain § 12.01, at 12-9 to 12-23 (rev.3d ed. 1996); 2 Words and Phrases, "Actual Cash Value" 332-38, 117-19 (1955 & Supp. 1996) (cases collected)). Fair market value accounts for the property's depreciated condition.[6]Perez, 689 So.2d at 291. The Goffs do not dispute that State Farm can withhold depreciation. They argue, rather, that State Farm cannot depreciate and withhold a portion of replacement cost designated as contractor overhead and profit.
Actual cash value includes overhead and profit where the insured is reasonably likely to need a general contractor for repairs. Mee v. Safeco Ins. Co. of Am., 908 A.2d 344, 348 (Pa.Super.Ct.2006); Gilderman v. State Farm Ins. Co., 437 Pa.Super. 217, 649 A.2d 941, 945 (1994). The cases upon which the Goffs rely are distinguishable because they present facts where the insurer has withheld the entire amount of overhead and profit pending actual repair. See Bankers Sec. Ins. Co. v. Brady, 765 So.2d 870, 872 (Fla. 5th DCA 2000) (stating in dicta that insurers are not entitled to withhold overhead and profit from actual cash value where nothing in the policy authorizes it); Mills v. Foremost Ins. Co., 511 F.3d 1300, 1302, 1306 (11th Cir.2008) (construing Florida law and holding insurer improperly withheld all profit, overhead, and taxes from actual cash value payment for hurricane damage); Salesin v. State Farm Fire & Cas. Co., 229 Mich.App. 346, 581 N.W.2d 781, 789-91 (1998) (holding under policy language identical to that in this case that insurer cannot exclude overhead and profit from actual cash value); Ghoman v. N.H. Ins. Co., 159 F.Supp.2d 928, 930, 935 (N.D.Tex.2001) (holding insurer cannot withhold overhead and profit from actual cash value advance payment); Gilderman, 649 A.2d at 945 (1994) (same).
In contrast, State Farm withheld but a portion of overhead and profit that it designated as depreciation. Thus, we must ask whether overhead and profit is depreciable in determining actual cash value. Usually, profit and overhead, generally twenty percent, are incorporated in the contractor's bid. Barry Zalma, Representing Insureds in a Catastrophe, 41 Tort Trial & Ins. Prac. L.J. 817, 842 n. 64 (2006). "Once this fact is recognized, the calculation of actual cash value by use of replacement cost less physical depreciation should be a multiplier of the total bid." Id. Although Florida cases have not specifically addressed this issue, courts in other jurisdictions have. For example, in Branch v. Farmers Insurance Co., 55 P.3d 1023 (Okla.2002), the court held that, using the replacement cost less depreciation method, it was proper to depreciate labor costs as well as materials:

*690 [S]ince labor to install a new roof was a cost the insured was reasonably likely to incur in replacing his roof, the cost of labor was included within the meaning of "replacement cost." Because labor was included within that definition, it was proper to depreciate both materials and labor when calculating the loss suffered by the insured.
....
Depreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss.
Id. at 1027 (citing Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 353 (Ind. 1982)).
"As replacement cost policies are intended to operate, following a loss, both actual cash value and the full replacement cost are determined. The difference between those figures is withheld as depreciation until the insured actually repairs or replaces the damaged structure." Leo John Jordan, What Price Rebuilding?, 19 ABA Fall Brief 17, 21 (1990). That is what State Farm did here. The appraisal form estimates actual cash value at $43,059.83 and replacement cost at $50,298.63. The difference of $7238.80, to be paid upon actual repair or replacement, is classified as "depreciation." In each of these figures, twenty percent of the structure-related estimate is attributed to overhead and profit. Thus, $1060.58 of the withheld depreciation amount is designated as overhead and profit.
We are unpersuaded by the Goffs' argument that the policy entitles them to the total amount of overhead and profit in the actual cash value payment. Therefore, we affirm the summary judgment for State Farm on count II.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ALTENBERND and VILLANTI, JJ., Concur.
NOTES
[1] See Leo John Jordan, What Price Rebuilding?, 19 ABA Fall Brief 17, 19-21 (1990), for a comprehensive discussion of the history, development, and intricacies of replacement cost coverage.
[2] The policy provides as follows:

SECTION ICONDITIONS
....
6. Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser.
Interestingly, engaging in the appraisal process is not a prerequisite to filing a lawsuit.
[3] The actual amount is $1060.54. The handwritten figure on the appraisal award is unclear and appears to be $1060.58.
[4] The complaint stated that the Goffs sought confirmation of the appraisal award so as to recover the amount of the award and/or to determine their status as the prevailing party for fee purposes. The trial court properly denied this motion. By the time of the motion hearing, State Farm had paid the appraisal award, and confirmation was unnecessary. Cf. Wilson v. Federated Nat'l Ins. Co., 969 So.2d 1133, 1134 (Fla. 2d DCA 2007) (holding trial court abused discretion in denying motion to confirm appraisal award where insurer still had not paid full amount of award).
[5] 627.428 Attorney's fee.

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
[6] "In the appraisal and insurance industries, the term `actual cash value' is often used to describe the pre-loss value of certain property, such as vehicles or appliances or structures." John W. Reis, Measure of Damages in Property Loss Cases, 76 Fla. B.J. 32 (2002); see also Johnny Parker, "Replacement Cost Coverage: A Legal Primer," 34 Wake Forest L. Rev. 295, 296 (1999) (stating that actual cash value simply places the insureds back in their preloss position).