LaROSE, Judge.
Lloyd and Edith Beverly appeal a final summary judgment entered in favor of State Farm Florida Insurance Company. The Beverlys sued State Farm for insurance benefits after their home sustained hurricane damage. They also sought at *629 torney’s fees under section 627.428, Florida Statutes (2004). Summary judgment was improper because genuine issues of material fact remain unresolved. Accordingly, we reverse.

Summary Judgment Standard

Summary judgment is proper only “if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fla. R. Civ. P. 1.510(c); Clifton v. United Cas. Ins. Co. of Am., 31 So.3d 826, 828 (Fla. 2d DCA 2010). “A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law.” Moore v. Morris, 475 So.2d 666, 668 (Fla.1985); see also Clifton, 31 So.3d at 828 (“Even the slightest possibility of the existence of a genuine issue of material fact precludes the entry of final summary judgment.”). We review a summary judgment de novo. Suncoast Auto Ctr., Inc. v. Consol. Prop. & Cas. Ins. Co., 880 So.2d 728, 730 (Fla. 2d DCA 2004).

Factual Background

' Hurricane Charley blew through the Beverlys’ home on August 13, 2004. In addition to damage to their residence, the Beverlys suffered damage to a barn, trailers, shed, and personal property. They reported the loss to State Farm within three days. The Beverlys contend that upon initial inspection of their home on August 19, 2004, State Farm’s adjuster told them that the barn, shed, fencing, and trailers were not covered under the policy. According to the Beverlys, the adjuster also refused to advance living expenses. For its part, State Farm claims that it promptly advanced $3000 for emergency expenses and began adjusting the loss.
The Beverlys note that they submitted a personal property inventory form with line-item detail on August 23, 2004. Yet, they say, as of September 1, 2004, State Farm had paid no benefits. The Beverlys then hired a public adjuster, Epic, to assist them. On September 20, 2004, State Farm wrote to Epic, advising that the Beverlys had not yet provided a sworn statement in proof of loss required by the policy.[1] Apparently, the Beverlys deliv *630 ered a proof of loss on September 29, 2004; according to State Farm, they did not provide supporting details or documents. See swpra note 1. The Beverlys counter that on September 29, 2004, they delivered their sworn statement in proof of loss for $511,500 and $341,000 actual cash value and attached a line-item dwelling damage estimate.
The Beverlys sued State Farm on October 1, 2004, six weeks after the loss. Within a few days, State Farm received an engineering report evaluating structural damage to the Beverlys’ home. On November 5, 2004, State Farm paid the Bev-erlys $46,014.11. In the correspondence accompanying the payment, State Farm advised the Beverlys that the proof of loss was deficient, noted the applicable policy requirements, and requested compliance.
A week later, on November 12, 2004, State Farm wrote the Beverlys to request the specific amounts claimed and documentation for expenses required to be incurred before payment, such as additional living expenses (ALE). The Beverlys responded on November 14, 2004:
Mr. and Mrs. Beverly acknowledge State Farm’s request for what they believe are their total damages. To help Mr. and Mrs. Beverly out, and assist them coming to an informed decision on their total damages, they kindly request that State Farm provide them with all of State Farm’s estimates, opinions, photographs of the damages, or anything else State Farm may have (it uses to calculate damages) that will help Mr. and Mrs. Beverly calculate their total damages.
On November 22, 2004, State Farm met the Beverlys and Epic to inspect some of the damaged personal property and to review ALE receipts. The next day, State Farm paid the Beverlys $65,217.98 for building damage and ALE of $266.16.
In early May 2005, the Beverlys sent State Farm an estimate claiming $594,993.20 in damages. By July 2005, the Beverlys and State Farm still could not agree on the amount of loss.
State Farm then invoked the appraisal process of the policy.[2] The Beverlys agreed but insisted that the appraisal address all coverages, including ALE. State Farm contended that ALE coverage was not disputed because State Farm reimbursed expenses as the Beverlys incurred them and submitted receipts. The trial court ordered appraisal for all coverages.
On August 26, 2005, the Beverlys advised State Farm that they were selling the home without repair. Four days later, State Farm wrote the Beverlys to advise that it had paid all ALE for which receipts had been submitted.
On June 8, 2006, the appraisers issued a partial award. The award listed replacement cost for the residence at $400,000 and $380,000 as its cash value, $55,000 replacement value and $45,000 cash value for the barn and shed, $22,500 for demolition and debris removal, and incurred costs for ALE and code upgrades. On August 7, 2006, State Farm paid the policy limits of $309,916 for the building, $30,992 for the dwelling extensions, and $15,495.80 for debris removal, and paid $6796.28 for contents and $266.16 ALE for generator gas, less prior payments.
On September 13, 2006, the appraisers issued a second partial appraisal award of $80,116.52 for the actual cash value of per *631 sonal property. On November 10, 2006, State Farm paid this award, less prior payments. With each payment, State Farm asked the Beverlys to contact it if they disagreed with the amounts paid. They did not respond until December 2006, when they advised State Farm that it owed over $20,000, for which they claimed they had already provided documentation. This amount included $8190.40 in ALE for cleanup expenses, drinking water, documentary photographs, water chlorination, pool shock, generator fuel, and replacement of spoiled food and damaged clothing. State Farm claims to have sent seven letters requesting clarification and supporting documentation, to which the Bev-erlys did not respond.
The Beverlys filed an amended complaint on April 11, 2007, claiming $5078.36 in ALE for photographs, groceries, gasoline, drinking water, water chlorination, pool supplies, cleanup supplies, clothing, and medications. On April 23, 2007, State Farm filed a motion to compel a further appraisal. The trial court granted State Farm’s motion.
On June 18, 2008, the Beverlys’ appraiser sent State Farm’s appraiser a spreadsheet claiming State Farm owed another $117,874.14 for ALE, but did not include supporting documents. On July 2, 2008, the Beverlys’ appraiser provided a revised spreadsheet showing $97,159.09 for ALE and included supporting receipts. On August 6, 2008, the Beverlys’ appraiser provided two additional spreadsheets containing their final ALE demand of $141,629.57. On February 2, 2009, the appraisers issued a third award of $674.03. On March 5, 2009, State Farm paid $407.87, the award amount less prior payments.

Motion for Summary Judgment

State Farm filed a motion for summary judgment on November 29, 2006, and an amended motion on April 6, 2009, arguing that suit was premature, that the Beverlys failed to comply with policy conditions, and that State Farm did not breach the policy because it never denied coverage and paid the appraisal awards timely.
The Beverlys responded that State Farm was not entitled to summary judgment and could not avoid its obligation to pay attorney’s fees because initially it denied coverage for the barn and shed, it waived proof of loss by paying benefits without one, and it confessed judgment by tendering additional benefits after the lawsuit was filed. The Beverlys filed a cross-motion for partial summary judgment addressing numerous issues, including breach of contract and fraud. The trial court denied the Beverlys’ motion[3] and granted summary judgment to State Farm. The trial court made no written or oral findings setting forth the undisputed material facts supporting its ruling.

Analysis

We surmise that, at its core, this case is about attorney’s fees under section 627.428. A trilogy of our cases governs entitlement to attorney’s fees where an insurer pays policy proceeds after suit is filed. In Goff v. State Farm Florida Insurance Co., 999 So.2d 684 (Fla. 2d DCA 2008), the Goffs’ home sustained hurricane damage. The parties disputed the amount of the actual cash value of the damage payable immediately upon loss and whether contractor overhead and profit were part of actual cash value. Id. at 686. The Goffs filed suit for breach of contract and a declaratory judgment regarding overhead and profit. Id. The Goffs moved for summary judgment on remaining unpaid benefits and for section 627.428 attorney’s fees, arguing that their lawsuit forced State *632 Farm to pay significant additional amounts. 999 So.2d at 687. State Farm also moved for summary judgment, asserting that the lawsuit was unnecessary because it had complied with all policy terms and that the appraisal process, and not the lawsuit, prompted a resolution. Id. The trial court granted summary judgment to State Farm. Id. On appeal, we affirmed the summary judgment ruling that State Farm owed no additional benefits; we reversed the summary judgment on attorney’s fees, holding that State Farm paid disputed benefits to which the Goffs were entitled only after the Goffs were forced to sue. Id. at 688.
About two years later, we decided Clifton v. United Casualty Insurance Co. of America, 31 So.3d 826 (Fla. 2d DCA 2010). In that case, Mr. Clifton sued United seeking additional policy proceeds for hurricane damage to his home. Id. at 827. After United invoked an appraisal process that resulted in an award to Mr. Clifton, he filed a motion to confirm the appraisal award and for attorney’s fees. Id. United filed a motion for summary judgment alleging that it was not responsible for attorney’s fees because it had not wrongfully withheld benefits and that Mr. Clifton could not prove it breached the policy or that he suffered any damages because United had paid all of the amounts due. Id. at 828. In response, Mr. Clifton filed an affidavit asserting that United had refused to respond to his pleas for additional policy proceeds until after he filed suit. Id. United disputed this assertion and claimed that it had no notice that Mr. Clifton was dissatisfied until he filed suit, but the only affidavit supporting its position had been withdrawn and the record showed United had paid significant sums to Mr. Clifton after he filed suit. Id. The trial court granted summary judgment for United, finding that it had not breached the policy because it had complied with policy payment terms. Id. On appeal, we reversed and remanded, holding that fact issues remained as to whether Mr. Clifton was forced to file suit to resolve the dispute with United, precluding summary judgment.
The third case is Hill v. State Farm Florida Insurance Co., 35 So.3d 956 (Fla. 2d DCA 2010). In Hill, the only issue on appeal was “whether the final judgment confirming the previously paid insurance appraisal [was] a confession of judgment or otherwise an event that entitle[d] Ms. Hill to a judgment to receive an award of [section 627.428] attorneys’ fees.” Id. at 960. Because the judgment was entered before Goff and Clifton, we reversed and remanded the case “for a renewed determination of whether Ms. Hill filed her lawsuit in good faith in order to force State Farm to adjust the claim or whether she filed suit merely as an effort to seek attorneys’ fees for the normal process of adjusting the claim.” Hill, 35 So.3d at 958. We wrote:
Adjusting and settling property claims under insurance policies is never an easy process. It requires a level of good faith and cooperation from all parties. The law does not provide any general mechanism to impose attorneys’ fees against one party or the other merely because the negotiation process is difficult. It is only when the claims adjusting process breaks down and the parties are no longer working to resolve the claim within the contract, but are actually taking steps that breach the contract, that the insured may be entitled to an award of fees under section 627.428....
The line between rigorous negotiations and breach of contract is undoubtedly difficult to describe and it is a determination that is fact intensive.... The fees we envisioned in Goff were the fees necessary to force State Farm back to the negotiations table to resolve the *633 dispute within the terras of the insurance contract. The appraisal process, for example, is not legal work arising from an insurance company’s denial of coverage or breach of contract; it is simply work done within the terms of the contract to resolve the claim. Thus, except under the most extraordinary of circumstance, we do not envision fees for such work to be recoverable under the rule announced in Goff.
Id. at 960-61 (internal citations omitted).
This trilogy establishes that an insurer’s post-suit payment of additional policy proceeds entitles the insured to section 627.428 attorney’s fees where the insurer “wrongfully caus[ed] its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the company’s power to resolve it.” See Clifton, 31 So.3d at 829 (citing First Floridian Auto & Home Ins. Co. v. Myrick, 969 So.2d 1121, 1124 (Fla. 2d DCA 2007)); see also Hill, 35 So.3d at 960-61; Goff, 999 So.2d at 688. Here, State Farm asserts that it never denied coverage and that the Beverlys repeatedly failed to comply with policy conditions for payment. The Bever-lys assert that State Farm denied coverage for the barn, shed, fencing, and trailers, and that they timely provided State Farm with the required documentation. Significant factual issues remain unresolved. Therefore, as in Clifton and Hill, we must reverse because material questions of fact remain as to whether the Beverlys were forced to file suit to resolve their claim under the insurance policy.
Reversed and remanded for further proceedings.
CASANUEVA, C.J., and KHOUZAM, J., Concur.

. The policy specified:
SECTION I — CONDITIONS
2. Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:
[[Image here]]
d. as often as we reasonably require:
(2)provide us with records and documents we request and permit us to make copies;
[[Image here]]
e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
(1) the time and cause of loss;
(2) interest of the insured and all others in the property involved and all encumbrances on the property;
(3) other insurance which may cover the loss;
(4) changes in title or occupancy of the property during the term of this policy;
(5) specifications of any damaged building and detailed estimates for repair of the damage;
(6) an inventory of damaged or stolen personal property described in 2.c.;
(7) receipts for additional living expenses incurred and records supporting the fair rental value loss;
(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.
[[Image here]]
8. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions.

. SECTION I □ CONDITIONS
[[Image here]]
6. Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser.

. The Beverlys did not cross-appeal the denial of their motion.