765 So.2d 870 (2000)
BANKERS SECURITY INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
Robert W. BRADY, Jr., Appellee/Cross-Appellant.
No. 5D99-1357.
District Court of Appeal of Florida, Fifth District.
August 18, 2000.
*871 Janet L. Brown of Boehm, Brown, Seacrest, Fischer & LeFever, P.A., Maitland, for Appellant/Cross-Appellee.
Randy E. Schimmelpfennig of Billings, Cunningham, Morgan & Boatwright, P.A., Orlando, for Appellee/Cross-Appellant.
W. SHARP, J.
Bankers Security Insurance Company appeals from a final summary judgment rendered against it in a lawsuit brought by Brady for breach of an oral settlement agreement. Brady cross-appeals the trial court's summary judgment ruling that Bankers failed to pay the full amount of his living expenses under his homeowners' insurance policy issued by Bankers. We affirm.
Brady's home, which was covered by a homeowners' insurance policy with Bankers, was damaged by a lightning strike and fire on July 6, 1998. Bankers retained independent adjuster James Shea and Brady retained public adjuster Ron Livingstone to determine the amount of damages due under the policy.
According to Brady, Shea and Livingstone reached an agreement that the dwelling loss totaled $65,000.00, give or take a few hundred dollars. Shea was supposed to contact Livingstone on July 27, 1998, with the final figure. Instead, he called at 4:30 p.m. to say he was no longer the adjuster on the case and that Gary Waytowich from Bankers had assumed responsibility for the claim.
A few days later, Brady sued Bankers, alleging breach of the oral settlement agreement. Bankers then notified Livingstone it was demanding an appraisal of Brady's loss, pursuant to the policy. However, it paid Brady $55,000.00. Brady amended his complaint to add a complaint for breach of the insurance contract, based on the fact that Bankers failed to pay his additional living expenses provided by the policy. He sought a determination from the court that the provision in the policy, which provided that Bankers would only pay 80% of his additional living expenses, is "coinsurance" and not enforceable because it lacked the coinsurance disclosure required by law.[1]
Bankers filed a motion alleging the lawsuit should be dismissed or abated pending compliance with the appraisal portions of the policy. The trial court denied the motion because only one portion of Brady's complaint dealt with breach of the insurance policy.
On December 10, 1998, Brady retained a contractor to do repairs on his home. Bankers paid Brady $7,963.57, which included overhead and profit of $5,846.21.
Bankers moved for summary judgment on February 19, 1999, alleging the undisputed facts showed the parties never reached a settlement agreement and that Brady was not entitled to overhead or profit beyond the amounts in his contract with the general contractor he had retained. It also claimed its payment of 80% of the additional living expenses did not constitute coinsurance, and thus no disclosure was required. Finally, Bankers alleged Brady breached the insurance contract because he failed to participate in the appraisal process provided for by the policy.
Brady also moved for summary judgment. He argued there is no provision in the policy which authorizes Bankers to withhold overhead and profit until he signs a contract with a general contractor. He had done much of the repair work in his home himself, causing him to miss work and use his personal time.
The trial court ruled there was no genuine issue of material fact as to these matters. It ruled Livingstone and Shea, as agents of the parties, had entered into a verbal agreement determining the amount of damage to the building as being approximately $65,000.00, and that Bankers cannot *872 withhold overhead and profit. It also ruled Bankers improperly (too late) sought to invoke the appraisal provisions of the policy. The court ruled against Brady, holding that the part of the policy covering additional living expenses was not coinsurance, and it was therefore enforceable as to the 80% limitation.
The depositions of Livingstone and Shea established that both understood they had the authority to assess the damage, and reach an agreement as to what the cost of repairs should be. Both felt they had reached an agreement as to the amount of damages, and both were upset when Waytowich removed Shea from the file. A computer entry for Bankers indicated Shea met with Livingstone to "resolve" the building damage issue. In Shea's first report to Bankers, he stated his job was to "reach an agreement with the contractor and public adjuster on the cost of repairs," and "reach agreement on total cost of repairs." And, in Shea's second and final report to Bankers, Shea stated he had "agreed in principle to accept a compromised offer of approximately $65,000.00 for the dwelling portion of the loss."
However, Waytowich contended the word "resolve" meant only that Shea was to give Bankers his final estimate of damages and have something ready to submit to Bankers for its approval. He denied that Shea had authority to bind Bankers.
Although there appears to be some proof that Shea lacked final authority to bind Bankers as to the building damage claim, it is very slim. Due to the fact that Bankers has paid Brady $55,000 (plus an amount close to $8,000.00), and would have paid an additional 10% profit and 10% overhead, for a total of approximately $65,000.00, there appears to be little point in remanding this issue for trial.
The record discloses without dispute that Brady and Bankers both retained adjusters. An adjuster by definition is a "representative of the insurer who seeks to determine the extent of the firm's liability for loss when a claim is submitted. A person who acts for the insurance company or the insureds in the determination and settlement of claims." Black's Law Dictionary. Their behavior and understanding in this case, as documented by Shea's reports to Bankers, clearly indicate he had damage settlement authority for Bankers, and he exercised it prior to being taken off the case by Waytowich.
Having concluded there was a binding settlement reached for $65,000.00, we need not address the additional issue of whether Bankers could withhold overhead and profit. It apparently has paid the settlement reached by Shea, less overhead and profit. But we find nothing in the policy that authorizes Bankers to withhold overhead and profit from the cost to repair or replace a covered loss, since under this policy Bankers undertook to pay its insured prior to actual repair or replacement.
We agree with the trial court that Bankers did not timely invoke its appraisal provision of the insurance policy, which provides:
6. Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
The appraisal provision of the policy is applicable only if the parties disagree on *873 the amount of the loss, or in this case, if the two adjusters had disagreed. However, here the parties, through their adjusters, agreed to the amount of the loss. Interestingly, the appraisal provision allows the appraisers to agree to the amount of the loss. That is exactly what the adjusters, rather than the appraisers, did in this case by mutual agreement.
Bankers also argues that the trial court erred in awarding Brady attorney's fees. The purpose of section 627.428 is to discourage insurance companies from contesting valid claims and to reimburse insureds for their attorney's fees when they must enforce in court their contract with the insurance company. Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403 (Fla. 1999); Delta Casualty Co. v. Pinnacle Medical, Inc., 721 So.2d 321 (Fla. 5th DCA 1998), affirmed, 753 So.2d 55 (Fla.2000).
Here, Brady was forced to file suit against Bankers for breach of its agreement to pay for his loss. Had Brady filed a breach of contract action and prevailed, he would clearly be entitled to fees under section 627.428. It is unreasonable to deny fees to Brady for what is in essence the same action. Thus attorney's fees were properly awarded pursuant to section 627.428.
With regard to Brady's cross-appeal, we agree with the trial court that the "Loss of UseLoss Participation Endorsement" is not a coinsurance provision, and thus it is not void because it lacks the coinsurance disclosure required by section 627.701. The policy provides:
COVERAGE DLoss Of Use
We will pay 80% of the damages you sustain due to any covered loss that is described in the following paragraphs 1, 2 and 3 of this section, but we will pay no more than the limit of liability for Coverage D shown in the Declarations.
1. If a loss covered under this Section makes that part of the residence premises where you reside not fit to live in, we cover, at your choice, either of the following ...
a. Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or
b. Fair Rental Value, meaning the fair rental value of that part of the residence premises where you reside less any expenses that do not continue while the premises is not fit to live in.
Section 627.701, Florida Statutes provides:
627.701. Liability of insureds; coinsurance; deductibles
(1) A property insurer may issue an insurance policy or contract covering either real or personal property in this state which contains provisions requiring the insured to be liable as a coinsurer with the insurer issuing the policy for any part of the loss or damage by covered peril to the property described in the policy only if:

(a) The following words are printed or stamped on the face of the policy, or a form containing the following words is attached to the policy: `Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the insured.';
(b) The coinsurance clause in the policy is clearly identifiable; and
(c) The rate for the insurance with or without the coinsurance clause is furnished the insured upon his or her request. (emphasis supplied)
We reject Brady's argument that this portion of the homeowner's policy, which provides for payment of living expenses off premises, is an insurance policy or contract which covers either real or personal property in this state. Living expenses for an insured forced out of his dwelling due to a covered peril, are different and apart from damage to the insured property. *874 The statute limits the coinsurance provision to "loss or damage by covered peril to the property described in the policy." Whatever Brady's additional living expenses may be, they are not additional damages to his home. Statutory language should be given its plain and ordinary meaning. Williams v. Ergle, 698 So.2d 1294 (Fla. 5th DCA 1997); Kelder v. ACT Corp., 650 So.2d 647 (Fla. 5th DCA), rev. denied, 660 So.2d 713 (Fla.1995); Martin v. Ocean Reef Villas Ass'n, Inc., 547 So.2d 1237 (Fla. 5th DCA 1989), rev. denied, 557 So.2d 35 (Fla.1990).
AFFIRMED.
THOMPSON, C.J., and GRIFFIN, J., concur.
NOTES
[1] § 627.701, Fla. Stat.