ROTHENBERG, J.
Amado Trinidad (“Trinidad”), the plaintiff below, appeals a summary judgment granted in favor of the insurer of his home, Florida Peninsula Insurance Company (“Florida Peninsula”). Trinidad’s lawsuit was based on Florida Peninsula’s failure to pay him for overhead and profit. Because Trinidad’s insurance policy is unambiguous, and he has not contracted to incur or incurred these costs, the trial court properly granted summary judgment in favor of Florida Peninsula, and we affirm.
After a fire damaged Trinidad’s house on February 11, 2008, he submitted a claim for payment to Florida Peninsula. Florida Peninsula admitted coverage and paid the claim. Trinidad, however, contends that Florida Peninsula’s payment was insufficient because it did not include an amount for overhead and profit.
Overhead and profit are elements of the costs paid to a contractor for repairs, and are included in repair contracts and estimates. See Goff v. State Farm Fla. Ins. Co., 999 So.2d 684, 689-90 (Fla. 2d DCA 2008). Overhead includes fixed costs to *503 run the contractor’s business, such as salaries, rent, utilities, and licenses. Profit is the amount the contractor expects to earn for his services. Although Trinidad has not hired a general contractor, or submitted a contract by a contractor estimating the repairs, he claims he is entitled to overhead and profit.
Trinidad initially based his argument on his contention that the loss settlement provision of his policy provided for an “actual cash value” payment for his loss, and “actual cash value” includes overhead and profit. Actual cash value is the actual cost of repair, less depreciation.[1] The parties now agree that the policy is a replacement cost policy, but Trinidad claims that Florida Peninsula still was required to pay him for overhead and profit even if he never hires a contractor and does not repair the damage. Florida Peninsula, however, argues that replacement cost is the cost to replace the damaged property, which does not include depreciation or overhead and profit until Trinidad either incurs these costs or he signs a contract for repairs and submits the contract to Florida Peninsula.
Our standard in reviewing an order granting summary judgment is de novo. See Bldg. Educ. Corp. v. Ocean Bank, 982 So.2d 37, 40 (Fla. 3d DCA 2008). Moreover, because the issue on appeal is a question of insurance policy interpretation, the question is one of law that is subject to de novo review. Penzer v. Transp. Ins. Co., 29 So.3d 1000, 1005 (Fla.2010).
The policy’s language governs the outcome of this case, and Florida law mandates that we construe insurance contracts in accordance with their plain meaning. Itnor Corp. v. Markel Int’l Ins. Co., 981 So.2d 661, 663 (Fla. 3d DCA 2008). Thus, “[wjhere the language of an insurance policy is clear and unambiguous, it must be construed to mean what it says and nothing more.” Telemundo Television Studios, LLC v. Aequicap Ins. Co., 38 So.3d 807, 809 (Fla. 3d DCA 2010).
In granting summary judgment in favor of Florida Peninsula, the trial court concluded: 1) the policy was unambiguous; 2) it excluded payment for overhead and profit unless such expenses are either incurred by the insured or reflected in a contract that binds the insured; and 3) because neither event occurred in this case, Trinidad was not entitled to such payments. We agree.
Under section I.3.b of the policy, Florida Peninsula will pay for covered losses at replacement cost, without deduction for depreciation, subject to the following:
(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
(a) The limit of liability under this policy that applies to the building;
(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or
(c) The necessary amount actually spent to repair or replace the damaged building.
The policy, therefore, unambiguously provides that Florida Peninsula pay replacement costs or the costs Trinidad actually incurs or which he demonstrates he is *504 likely to incur. Although overhead and profit costs must be included when payment is conditioned on an “actual cash value” basis, the Florida Legislature amended section 627.7011, Florida Statutes, to require all homeowners’ policies be adjusted on the basis of replacement costs, as opposed to actual cash value. Based on this amendment, Florida Peninsula amended its policy with Trinidad by endorsement in 2005 and deleted the actual cash value language previously contained in the policy-
Thus, since 2005 the loss settlement section of Trinidad’s policy was based on replacement costs, not actual cash value. The policy’s language specifically uses the words “replacement cost” to cover situations where the insured does not hire a contractor and does not spend money to repair or replace the loss, and in the alternative, it provides for payment of money “actually spent” when the property is actually repaired or replaced.
Trinidad contends overhead and profit is always a part of replacement costs, without regard to whether such costs are incurred or are likely to be incurred. In support of his claim, Trinidad cites to Bankers Security Insurance Co. v. Brady, 765 So.2d 870, 871 (Fla. 5th DCA 2000). We are not persuaded by Trinidad’s argument and Brady does not conflict with our conclusion. It is undisputed that general contractors, who coordinate and schedule the work to be performed by the subcontractors, are entitled to overhead and profit, and Trinidad’s policy provides for the payment of overhead and profit. It is also undisputed that if Trinidad’s policy provided for payment of Trinidad’s loss on an actual cash value basis, Florida Peninsula would have been required to include payment for overhead and profit when making actual cash value payments where it is reasonably likely that a general contractor would be needed to make the repairs. See Goff, 999 So.2d at 689. However, Trinidad’s policy is not an actual cash value policy, it is a replacement cost policy, which only requires Florida Peninsula to pay costs incurred by Trinidad (money Trinidad actually spent or which he became contractually obligated to spend for repair of the damages) when repairing the property. Not all repairs require the services of a general contractor. Because Trinidad has not hired a general contractor, spent any money for overhead and profit, or become contractually obligated to pay for such costs, payment for a contractor’s overhead and profit is not contractually owed by Florida Peninsula under the policy.
The Fifth District’s holding in Brady does not require this Court to hold otherwise, and is not in conflict with this Court’s findings. In Brady, the policy provided for payment on an actual cash value basis. Additionally, the insured retained a contractor, the insurer had already made a payment to the insured in connection with the contractor’s repairs which included overhead and profit, and the insurer had already agreed to pay for profit and overhead. The issue before the Brady court was whether a previous settlement amount bound the insurer to make further payment. Brady, 765 So.2d at 871.
In the instant case, however, the policy is a replacement cost policy, no contractor was hired, no repairs were made that required payment of overhead and profit, and no contract for such repairs was entered into or presented to Florida Peninsula. Thus, Florida Peninsula did not owe Trinidad for these costs, and the trial court correctly entered summary judgment in favor of Florida Peninsula. See State Farm Fla. Ins. Co. v. Lorenzo, 969 So.2d 393, 395-96 (Fla. 5th DCA 2007) (holding that based on the policy language, which *505 provided for payment on a replacement cost basis, the insurer properly withheld a portion of the loss value until such cost was actually incurred).
Our reading of section 627.7011(3), relating to depreciation holdbacks in replacement cost policies, also does not alter our conclusion in this case. Payment for profit and overhead is not mentioned in section 627.7011, which requires payment of “replacement costs without reservation or holdback of any depreciation in value, whether or not the insured replaces or repairs the dwelling.” § 627.7011(3). The statute only requires that replacement costs be paid without a holdback for depreciation. The statute does not require payment of profit and overhead which have not been incurred nor are likely to be incurred. Thus, the statute’s plain language precludes Trinidad’s interpretation. See Fla. Farm Bureau Cas. Ins. Co. v. Cox, 967 So.2d 815 (Fla.2007) (finding a statute’s plain language did not support reading additional language into its terms).
The policy's unambiguous terms require Trinidad to either hire a contractor who charges for overhead and profit or to incur expenses for overhead and profit before Florida Peninsula is required to pay for such costs. Because he did neither, Florida Peninsula was not obligated under the policy to pay Trinidad for overhead and profit, and the trial court correctly granted summary judgment in Florida Peninsula’s favor.
Affirmed.

. At oral argument, however, Trinidad properly conceded that the policy is a replacement cost policy, not an actual cash value policy.