PARIENTE, J.
The issue in this case concerns the scope of replacement cost insurance coverage under the applicable provisions of the 2008 Florida Statutes. In Trinidad v. Florida Peninsula Insurance Co., 99 So.3d 502, 504 (Fla. 3d DCA 2011), the Third District Court of Appeal concluded that Florida Peninsula Insurance Company was not required by either its replacement cost homeowner’s insurance policy or the applicable provisions of section 627.7011, Florida Statutes (2008), to pay Amado Trinidad, its insured, costs for a general contractor’s overhead and profit because Trinidad did not repair or contract to repair the damage to his home.[1] We accepted jurisdiction on the basis that the Third District’s decision in Trinidad expressly and directly conflicts with the Second District Court of Appeal’s decision in Goff v. State Farm Florida Insurance Co., 999 So.2d 684 (Fla. 2d DCA 2008). See art. V, § 3(b)(3), Fla. Const.[2]
For the reasons more fully explained below, we hold that an insurer’s required *436 payment under a replacement cost policy includes overhead and profit, where the insured is reasonably likely to need a general contractor for the repairs, because the insured would be required to pay costs for a general contractor’s overhead and profit for the completion of repairs in the same way the insured would have to pay other replacement costs he or she is reasonably likely to incur in repairing the property. Because section 627.7011, Florida Statutes (2008), and the replacement cost policy in this case, did not require the insured to actually repair the property as a condition precedent to the insurer’s obligation to make payment, the insurer was not authorized to withhold, pending actual repair, its payment for replacement costs, which is measured by what it would cost the insured to repair or replace the damaged structure on the same premises if the insured were to do so. Accordingly, we quash the Third District’s decision below, which impermissibly allowed Florida Peninsula to single out overhead and profit from other replacement costs and withhold payment for only those costs, and direct that this case be remanded to the trial court to determine whether Trinidad is reasonably likely to need a general contractor for the repairs that encompass his covered loss.
FACTS AND PROCEDURAL HISTORY
Trinidad filed a claim with his homeowner’s insurance company, Florida Peninsula, for fire damage that occurred to his Miami home on February 11, 2008. Florida Peninsula admitted coverage pursuant to Trinidad’s replacement cost policy and made a payment on the claim for completion of the repairs, even though Trinidad did not make repairs to the home or hire a general contractor to undertake the repairs. Florida Peninsula’s payment, while including other costs that would be necessary to make the repairs, did not, however, include an amount for a general contractor’s overhead and profit. Florida Peninsula asserted that it was entitled to withhold payment of overhead and profit until Trinidad actually incurred those particular expenses in repairing or contracting to repair the home.
Overhead and profit are costs included in repair estimates and paid to contractors pursuant to contracts for repairs. Specifically, overhead includes “fixed costs to run the contractor’s business, such as salaries, rent, utilities, and licenses,” and profit “is the amount the contractor expects to earn for his services.” Trinidad, 99 So.3d at 502-03.
Trinidad’s insurance contract with Florida Peninsula is a replacement cost policy. The relevant policy language provides that Florida Peninsula will pay for covered losses as follows:
[A]t replacement cost without deduction for depreciation, subject to the following:
(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
(a) The limit of liability under this policy that applies to the building;
(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or
(c) The necessary amount actually spent to repair or replace the damaged building.
*437 Trinidad filed a breach of contract lawsuit against Florida Peninsula, alleging that, like the other costs of repair Florida Peninsula paid despite Trinidad not completing any repairs to the home, Florida Peninsula was required to pay Trinidad costs for overhead and profit. In essence, Trinidad argued that Florida Peninsula could not single out overhead and profit from all other costs of the repair and withhold payment of just those portions of the loss until Trinidad actually incurred expenses for overhead and profit. Florida Peninsula responded by contending that it was not required by the policy or by the applicable provisions of the 2008 Florida Statutes to pay overhead and profit until Trinidad actually incurred those particular costs. The trial court granted summary judgment in favor of Florida Peninsula, finding that the policy language was unambiguous and that Florida Peninsula was not required to pay overhead and profit because those costs had not been “actually spent” in accordance with the terms of subsection (l)(c) of the policy.
Trinidad appealed to the Third District, which affirmed the trial court’s summary judgment in favor of Florida Peninsula and held that “[t]he pokey’s unambiguous terms require Trinidad to either hire a contractor who charges for overhead and profit or to incur expenses for overhead and profit before Florida Peninsula is required to pay for such costs.” Trinidad, 99 So.3d at 505. Since Trinidad “did neither,” the Third District stated, “Florida Peninsula was not obligated under the policy to pay Trinidad for overhead and profit.” Id.
The Third District reasoned that the policy “unambiguously provides that Florida Peninsula pay replacement costs or the costs Trinidad actually incurs or which he demonstrates he is likely to incur.” Id. at 503-04. Explaining that “[n]ot all repairs require the services of a general contractor,” the Third District concluded that under the terms of the policy, Florida Peninsula was required to pay only costs actually spent or costs Trinidad became contractually obligated to spend to repair the damage to his home. Id. at 504.
In addition, the Third District rejected Trinidad’s assertion that section 627.7011(3), Florida Statutes (2008), which required the insurer to pay “replacement costs without reservation or holdback of any depreciation in value, whether or not the insured replaces or repairs the dwelling,” altered its analysis. Trinidad, 99 So.3d at 505 (quoting § 627.7011(3), Fla. Stat. (2008)). In determining that the statute did not mention payment for overhead and profit, but “only require[d] that replacement costs be paid without a hold-back for depreciation,” and did not “require payment of profit and overhead which have not been incurred nor are likely to be incurred,” the Third District stated that “the statute’s plain language precludes Trinidad’s interpretation” because the court could not read any additional language or terms into the statute. Id.
• ANALYSIS
This case presents a question of insurance policy interpretation and statutory construction. Because these are pure questions of law, this Court’s review is de novo. See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241, 1246 (Fla.2008); Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005). In addition, de novo review is the appropriate standard governing this Court’s analysis because the question presented for review was resolved on summary judgment. See Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005).
*438 In its decision below, the Third District held that Florida Peninsula was not required to include overhead and profit costs in its loss settlement payment to Trinidad pursuant to a replacement cost insurance policy because Trinidad had not actually incurred those costs. Trinidad, 99 So.3d at 505. Trinidad contends that the Third District’s conclusion was erroneous for two principal reasons. First, he asserts that the Third District erred in its interpretation of section 627.7011, which requires payment of replacement costs without holdback of depreciation, whether or not the insured replaces or repairs the damaged property. Second, he argues that the Third District misconstrued his insurance policy with Florida Peninsula and that the policy requires Florida Peninsula to pay overhead and profit irrespective of whether those costs are actually incurred. We agree in both respects and conclude that the Third District erred by holding that overhead and profit are not included within the scope of replacement cost insurance until those costs are actually incurred.
We turn first to a discussion of replacement cost insurance and explain why we conclude that overhead and profit are considered replacement costs. We then address the effect of the applicable statute and the applicable policy language.
I. Replacement Cost Insurance
“Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.” State Farm Fire & Cas. Co. v. Patrick, 647 So.2d 983, 983 (Fla. 3d DCA 1994). Replacement cost “is measured by what it would cost to replace the damaged structure on the same premises.” Davis v. Allstate Ins. Co., 781 So.2d 1143, 1144 (Fla. 3d DCA 2001) (quoting Kumar v. Travelers Ins. Co., 211 A.D.2d 128, 627 N.Y.S.2d 185, 187 (1995)).
In contrast to a replacement cost policy, actual cash value is generally defined as “fair market value” or “[replacement cost minus normal depreciation,” where depreciation is defined as a “decline in an asset’s value because of use, wear, obsolescence, or age.” Black’s Law Dictionary 506, 1690 (9th ed. 2009); see also Goff, 999 So.2d at 689. In other words, replacement cost policies provide greater coverage than actual cash value policies because depreciation is not excluded from replacement cost coverage, whereas it generally is excluded from actual cash value. See Goff, 999 So.2d at 689.
In Goff the Second District concluded that overhead and profit are included in the scope of an actual cash value policy “where the insured is reasonably likely to need a general contractor for repairs.” Id. The Second District correctly determined, in essence, that overhead and profit are like all other costs of a repair, such as labor and materials, the insured is reasonably likely to incur. See id. at 689-90 (citing Branch v. Farmers Ins. Co., 55 P.3d 1023, 1027 (Okla.2002)). The Second District therefore held that a portion of overhead and profit, like a portion of all other costs, was included but could be depreciated in an actual cash value policy. Id. at 690.
In contrast, in a replacement cost policy, an insurer’s ability to depreciate is not relevant because replacement cost insurance is insurance on a property’s depreciation. See Patrick, 647 So.2d at 983. However, under the view of replacement cost insurance advanced by Florida Peninsula, despite the fact that an insurer may be able to depreciate a portion of overhead and profit in an actual cash value policy (just as the insurer can depreciate a portion of other costs), an insurer would not be required to pay any overhead and prof *439 it in a replacement cost policy. This result, in which the insurer is required to provide less coverage in a replacement cost policy than in an actual cash value policy, would be anomalous because replacement cost insurance is specifically designed to provide greater coverage.
Because replacement cost insurance provides coverage based on the cost to repair or replace the damaged structure on the same premises, we conclude that overhead and profit necessarily must be included within the scope of a replacement cost policy where it is reasonably likely a general contractor would be needed for the repairs. Accordingly, overhead and profit are a necessary component of replacement costs, just as they are for actual cash value, because replacement cost insurance is intended to compensate the insured for what it would cost to repair or replace the damaged property.
Thus, we conclude that overhead and profit are included in the replacement cost of a covered loss when the insured is reasonably likely to need a general contractor for the repairs. We now determine if the applicable statute or policy permitted Florida Peninsula to withhold payment of those particular replacement costs until Trinidad actually incurred them. To answer this question, we first consider whether section 627.7011 provides authority to an insurer for not requiring payment of overhead and profit because those costs were not actually incurred.
II. Section 627.7011
When construing a statute, this Court attempts to give effect to the Legislature’s intent, looking first to the actual language used in the statute and its plain meaning. See Daniels, 898 So.2d at 64. “Where the statute’s language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent.” Fla. Dep’t of Children & Family Servs. v. P.E., 14 So.3d 228, 234 (Fla.2009). “When considering the meaning of terms used in a statute, this Court looks first to the terms’ ordinary definitions^ which] ... may be derived from dictionaries.” Metro. Cas. Ins. Co. v. Tepper, 2 So.3d 209, 214 (Fla.2009).
The 2008 version of section 627.7011, the applicable statutory provision for the period of time during which Trinidad incurred his loss, provided in relevant part as follows:
(3) In the event of a loss for which a dwelling or personal property is insured on the basis of replacement costs, the insurer shall pay the replacement cost without reservation or holdback of any depreciation in value, whether or not the insured replaces or repairs the dwelling or property.
[[Image here]]
(6) This section does not prohibit an insurer from limiting its liability under a policy or endorsement providing that loss will be adjusted on the basis of replacement costs to the lesser of:
(a) The limit of liability shown on the policy declarations page;
(b) The reasonable and necessary cost to repair the damaged, destroyed, or stolen covered property; or
(c) The reasonable and necessary cost to replace the damaged, destroyed, or stolen covered property.
§ 627.7011, Fla. Stat. (2008) (emphasis added).[3]
*440 Both Trinidad and Florida Peninsula assert that the plain language of section 627.7011, as it existed in 2008 at the time of Trinidad’s covered loss, is clear, but they disagree about the effect of the statute on the issue in this case. Trinidad argues that, because section 627.7011(3) states that replacement costs must be paid regardless of whether the insured actually replaces or repairs the damaged property, insurers are not permitted to hold back any portion of the replacement cost payment contingent on the insured actually incurring a particular cost. Florida Peninsula contends, on the other hand, that the statute merely requires payment of replacement costs to be made without depreciation, and because it does not mention payment of overhead and profit -that have not been incurred, the insurer is not obligated to pay those costs. The Third District accepted Florida Peninsula’s interpretation of the statute. See Trinidad, 99 So.3d at 505 (“The statute only requires that replacement costs be paid without a holdback for depreciation. The statute does not require payment of profit and overhead which have not been incurred nor are likely to be incurred.”).
We conclude that the Third District’s statutory construction analysis was flawed. For property “insured on the basis of replacement costs,” section 627.7011(3) has two primary objectives. First, the statute requires insurers to pay the replacement cost of a covered loss irrespective of whether the insured actually repairs or replaces the damaged property. Second, the statute requires that depreciation not be withheld pending the actual repair. In other words, pursuant to section 627.7011(3), it is immaterial in a replacement cost policy whether the damaged structure is replaced or repaired; that factor simply does not affect the statutory mandate as it would if payments were being made on an actual cash value basis.
Instead, the statute requires the insurer in all cases to pay the replacement costs of the covered loss, which, as we have explained, means what it would cost the insured to rebuild or repair the property if the insured decides to do so. Because we have concluded that overhead and profit are replacement costs where the insured is reasonably likely to need a general contractor for the repairs, it is clear that, as with other replacement costs, section 627.7011(3) does not permit an insurer to withhold overhead and profit pending actual repair.
Requiring the insurer to pay overhead and profit regardless of whether the insured actually repairs the property is also consistent with section 627.7011(6), which provides that the insurer may limit its liability to the “reasonable and necessary cost” to repair or replace the damaged property. It is generally accepted that courts are required to “give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.” Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 199 (Fla.2007) (quoting Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So.2d 891, 898 (Fla.2002)). Although section 627.7011(3) provides that an insurer must pay replacement costs, section 627.7011(6) provides that the insurer can limit its liability to those costs “reasonable and necessary” to the replacement or repair. Therefore, *441 reading these two sections together provides that costs “reasonable and necessary” to the repair are included in the replacement costs the insurer is statutorily required to pay, regardless of whether the property is repaired.
Accordingly, if the insured is unlikely to incur overhead and profit, section 627.7011(6) would allow the insurer to withhold payment of those costs consistent with section 627.7011(3) because they are not “reasonable and necessary” to the repair. See § 627.7011(6), Fla. Stat. (2008). This logically follows because, if the insured is not reasonably likely to incur overhead and profit in repairing the damaged property, then overhead and profit are not replacement costs of the insured’s covered loss. On the other hand, if overhead and profit are going to be “reasonable and necessary” to the repair, section 627.7011(3) would mandate their payment as replacement costs.
Further, if overhead and profit were not included in the scope of replacement cost insurance where it is reasonably likely the insured will incur those costs, then no other repair costs, such as labor and materials, would be considered replacement costs. Simply put, overhead and profit are no different than any other costs of a repair that the insured is reasonably likely to incur, all of which are considered replacement costs and are not actually incurred until the repair is made — a requirement not imposed by section 627.7011. Such an interpretation of replacement cost insurance — that is, excluding all costs until they are actually incurred — would in actuality render the coverage meaningless.
We therefore hold that the Third District erred in concluding that section 627.7011 does not require the insurer to include overhead and profit in a payment based on replacement costs simply because overhead and profit have not been incurred. We turn next to a discussion of the applicable insurance policy and the Third District’s construction of that policy, which is the second argument advanced by Trinidad in support of his position on appeal.
III. The Policy
“In interpreting an insurance contract, we are bound by the plain meaning of the contract’s text.” State Farm, Mut. Auto. Ins. Co. v. Menendez, 70 So.3d 566, 569 (Fla.2011). “If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.” Id. at 569-70 (quoting Travelers Indem. Co. v. PCR, Inc., 889 So.2d 779, 785 (Fla.2004)). Further, provisions in an insurance policy must be construed and applied to be in full compliance with the Florida Statutes. See, e.g., Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 896 (Fla.2003).
Trinidad’s homeowner’s insurance policy with Florida Peninsula provides that Florida Peninsula will pay for covered losses, such as the loss at issue in this case, as follows:
[A]t replacement cost without deduction for depreciation, subject to the following:
(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
(a) The limit of liability under this policy that applies to the building;
*442 (b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or
(c) The necessary amount actually spent to repair or replace the damaged building.
In its decision, the Third District held that the policy, which “governs the outcome of this case,” was unambiguous and excluded payment for overhead and profit unless those expenses were either incurred by the insured or reflected in a contract that binds the insured. Trinidad, 99 So.3d at 503. In support of this conclusion, the Third District explained that the policy language “specifically uses the words ‘replacement cost’ to cover situations where the insured does not hire a contractor and does not spend money to repair or replace the loss, and in the alternative, it provides for payment of money ‘actually spent’ when the property is actually repaired or replaced.” Id. at 504. We conclude that the Third District erred in its interpretation of the policy language because it relied on the wrong subsection of the policy.
Despite the Third District’s reliance on the “actually spent” language in subsection (l)(c) of the loss settlement provision in Trinidad’s policy, Florida Peninsula’s payment in this case was made pursuant to subsection (l)(b) of the policy — rather than subsection (l)(c) — because Trinidad did not actually spend any money to repair or replace the damaged property. Florida Peninsula has itself acknowledged that its payment to Trinidad was made pursuant to this provision, stating in its brief filed in this Court that subsection (l)(b) of the policy, which governs payment of replacement costs when no repairs have been made, is the determinative policy provision, whereas subsection (l)(c) is an alternative method of calculating the payment amount when the insured has actually undertaken repairs.
In fact, Florida Peninsula paid Trinidad other costs for the repair even though, as with overhead and profit, Trinidad also did not actually spend any money for those costs. Indeed, if subsection (l)(c) of the policy, which requires payment only for the “necessary amount actually spent” on the repairs, was the applicable provision, Florida Peninsula would not have been required to pay Trinidad anything because Trinidad did not actually spend anything on repairs. An interpretation of the policy that permitted such an outcome would be contrary to section 627.7011, which requires payment of replacement costs regardless of whether the insured replaces or repairs the property, and would therefore be unenforceable. See Kaklamanos, 843 So.2d at 896.
Subsection (l)(b) of the policy is thus the relevant provision, and it requires Florida Peninsula to pay “[t]he replacement cost of that part of the building damaged for like construction and use on the same premises.” Accordingly, the unambiguous terms of the policy state that Florida Peninsula will pay the replacement costs of the damaged property. Because the replacement costs of the covered loss include overhead and profit where the insured is reasonably likely to need a general contractor for repairs, the plain language of the policy clearly requires Florida Peninsula to pay overhead and profit if the insured is reasonably likely to need a general contractor. Neither the policy nor the 2008 version of the applicable Florida statute, as we have explained, permitted withholding any component of the replacement costs until the insured actually incurred expenses for the repairs.
Finally, we address and reject the Third District’s reliance on Goff to determine that overhead and profit were not neces *443 sary elements of replacement cost coverage unless those costs were actually incurred. In fact, Goff supports the opposite conclusion.
In Goff 999 So.2d at 689, the Second District concluded that overhead and profit are included in the definition of actual cash value where the insured is reasonably likely to need a general contractor for repairs. Consistent with the Second District’s conclusion, the Third District in Trinidad recognized that, if Trinidad’s policy provided for payment of his covered loss on an actual cash value basis, rather than based on replacement costs, Florida Peninsula would have been required to include overhead and profit when making actual cash value payments where it is reasonably likely that a general contractor would be needed for the repairs. Trinidad, 99 So.3d at 504.
The result approved by the Third District — where overhead and profit are included in actual cash value but not in replacement cost insurance — is contrary to the coverage each type of insurance is designed to provide. As we have explained, actual cash value is defined as replacement cost minus depreciation. If overhead and profit are part of actual cash value, then those costs necessarily must be part of replacement cost insurance because replacement cost insurance encompasses actual cash value. While overhead and profit may, like other costs, be depreciable, as the Second District concluded in Goff 999 So.2d at 689-90, depending on the applicable policy and statute, an insurer’s ability to depreciate is irrelevant in a replacement cost policy like Trinidad’s, which provides for payment “at replacement cost without deduction for depreciation.”
Because the insurance policy in this case provides that Florida Peninsula will pay “[t]he replacement cost of that part of the building damaged for like construction and use on the same premises,” Florida Peninsula was required by the policy’s unambiguous terms to include overhead and profit in its payment for Trinidad’s covered loss, assuming Trinidad establishes that he is reasonably likely to need a general contractor for the repairs. Accordingly, we hold that the Third District erred in concluding, based on the policy, that Florida Peninsula was not required to pay Trinidad overhead and profit because Trinidad had not actually incurred those costs.
CONCLUSION
For the reasons set forth above, we hold that replacement cost insurance includes overhead and profit where the insured is reasonably likely to need a general contractor for repairs. We therefore conclude that the Third District erred in determining both that the 2008 version of section 627.7011 and the insurance policy itself permitted Florida Peninsula to withhold payment of overhead and profit because Trinidad had not actually incurred those costs. Accordingly, we quash the Third District’s decision and direct that this case be remanded to the trial court to determine, consistent with this opinion, whether Trinidad is reasonably likely to need a general contractor for the repairs that encompass his covered loss.
It is so ordered.
LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., dissents with an opinion, in which CANADY, J., concurs.

. The 2008 version of section 627.7011 is the applicable version in this case because that is the version of the statute that was in effect when Trinidad incurred his loss. Section 627.7011, however, has since been amended, most recently in 2011. See ch.2011-39, § 19, Laws of Fla. Our analysis in this case therefore applies only to the version of the statute in effect in 2008.

. United Policyholders, a nonprofit organization that provides information and advocates for insurance consumers, filed an amicus curiae brief in support of Trinidad.

. Although the 2008 version of the statute is the relevant version governing our analysis in this case, section 627.7011 has since been amended to provide that the insurer must pay "at least the actual cash value of the insured loss, less any applicable deductible,” except in *440 the case of a "total loss of a dwelling,” in which case "the insurer shall pay the replacement cost coverage without reservation or holdback of any depreciation in value.” § 627.701 l(3)(a), Fla. Stat. (2012). In the absence of a total loss, therefore, the insurer is no longer required, as it was under the terms of the 2008 version of the statute, to pay replacement costs without a holdback of any depreciation in value.