LEVINE, J.
The appellant, an insurance company, raises four issues for our review: (1) whether a replacement cost homeowners’ policy requires an insurer to replace damaged property, as a matter of law, or whether the insurer may limit its liability and repair the property; (2) whether the trial court correctly determined the insured was entitled to judgment as a matter of law on the issue of liability because the insurer failed to pay a general contractor’s overhead and profit; (3) whether the trial court abused its discretion in striking all of the insurer’s witnesses because they were not general contractors; and finally, (4) whether the trial court abused its discretion when the court prohibited the insurer from cross-examining the insured’s expert as to matters that may have affected the witness’s opinion.
We agree with the insurer on all four issues. The insurer should have had an opportunity to argue that it could repair the damaged property and that hiring a general contractor was unnecessary. Furthermore, the insurer’s witnesses should not have been stricken, nor should the insurer have been prohibited from cross-examining the insured’s expert as to facts weighing on the credibility of his opinion. Any one of the above errors would have required reversal for a new trial though we write to address all four.
The insured, David Gal, discovered water had leaked from his kitchen sink into his custom-made kitchen cabinets. The insurer, Prepared Insurance Company, had its adjuster inspect the damage. The *16 adjuster estimated the loss to be $8,653.47. The adjuster’s estimate did not include a general contractor’s “overhead and profit.”
The insurer also had a cabinetry expert inspect the cabinets. The insurer’s expert claimed he could restore the cabinets for $2,585. Alternatively, he could replace the cabinets for $19,065. However, the expert’s calculation did not include the cost to hire a plumber or electrician who would be necessary to complete the project. The insurer’s expert also did not include a general contractor’s overhead and profit in his estimate as he admitted he did not know if hiring a general contractor would be necessary. Nevertheless, the insurer’s expert also commented that he had worked on similar projects with plumbers and electricians, but had never been hired as a subcontractor by a general contractor.
The insurer issued a payment to the insured for $6,153.47 (the adjuster’s original $8,653.47 estimate less the policy’s $2,500 deductible). The insured then sued the insurer, claiming that the insurer had undervalued his loss because the insurer failed to pay the full replacement cost of the cabinets and failed to issue payment for a general contractor’s overhead and pi'ofit.
Subsequently, the insured suffered a second loss. This time, an upstairs air conditioner started leaking, causing additional water damage to the kitchen area. The insurer paid the insured $95,000 pursuant to the policy.
After the second leak, the insured had his own expert, a general contractor, inspect the kitchen. The insured’s expert claimed that the moisture in the kitchen had warped the kitchen cabinets. However, he admitted that in doing his evaluation he had not distinguished between the damage resulting from the initial sink leak and the subsequent second floor leak. Regardless, he asserted that even if the second leak had not occurred, his opinion would be the same.
The insured’s expert claimed repairing the cabinets would be impossible due to their unique nature and that they had to be replaced entirely. Additionally, because the cabinets had been integrated into the kitchen, he needed to replace much of the kitchen as well. In all, the insured’s expert opined that replacing the cabinets would cost $107,902.50.
The trial court made several pre-trial rulings that impacted the outcome of this case. The trial court granted partial summary judgment in the insured’s favor on the issue of liability, finding that the insurer violated the insurance policy by failing to pay a general contractor’s overhead and profit. The trial court also found that, because the insurance policy was a “replacement cost policy,” the insurer was required to replace the cabinets, not repair them. Next, on the day of trial, the trial court determined that because a general contractor was necessary, the only witnesses qualified to testify were general contractors. Because neither of the insurer’s witnesses — its adjuster and the insurer’s cabinetry expert — were licensed general contractors, they were stricken. Finally, the trial court determined that the insurer could not cross-examine the insured’s expert about the second water damage incident, finding it to be irrelevant.
Following a jury trial, the jury awarded the insured $44,304.85 in damages. This appeal followed.
We review the trial court ruling on a motion for summary judgment de novo. Eco-Tradition, LLC v. Pennzoil-Quaker State Co., 137 So.3d 495, 496 (Fla. 4th DCA 2014). “The law is well settled in Florida that a party moving for summary judgment must show conclusively the ab *17 sence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought.” Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
We write first to address the trial court’s interpretation of “replacement cost policy.” The trial court concluded that “replacement cost” meant that the insurer had to replace, rather than repair, the cabinets. We reverse as the trial court incorrectly interpreted what a “replacement cost policy” is.
“Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.” Trinidad v. Fla. Peninsula Ins. Co., 121 So.3d 433, 438 (Fla.2013) (emphasis added) (citation omitted). A “replacement cost policy” is a policy where the insurer agrees to compensate for a loss without taking into account depreciation. See id. Such a policy does not prohibit repairing the damaged property. See id. In fact, both the governing statute as well as the parties’ insurance policy expressly provide that an insurer may limit its liability to the “reasonable and necessary cost to repair the damaged, destroyed, or stolen covered property.” See § 627.7011(6)(b), Fla. Stat. (2010) (amended 2011) (emphasis added). Thus, we conclude that a replacement cost policy does not mandate that the insurer replace the damaged property.[1]
We further write to address the trial court’s ruling that payment for a general contractor’s overhead and profit was required as a matter of law.
In Trinidad, the Florida Supreme Court stated that overhead and profit must be paid under a replacement cost policy when overhead and profit “are going to be ‘reasonable and necessary’ to the repair.” 121 So.3d at 441. However, if overhead and profit are not “reasonable and necessary” to the repair, then the insurer may withhold payment. See id. (citing § 627.7011(6), Fla. Stat. (2008)). Thus, an insurer is required to pay overhead and profit only if the insured is “reasonably likely to need a general contractor.” Id. at 440. The issue of whether overhead and profit are “reasonably necessary” is really “no different than any other costs of a repair,” see id. at 441, and the amount the insured is owed under an insurance policy will generally be a question of fact for the jury, see Citizens Prop. Ins. Corp. v. Mallett, 7 So.3d 552, 556 (Fla. 1st DCA 2009); see also Mee v. Safeco Ins. Co. of Am., 908 A.2d 344, 348 (Penn.Super.Ct.2006) (“Whether use of a general contractor was reasonably likely is a question of fact for the jury.”).
In the present case, there remained disputed issues of fact as to whether a general contractor would be necessary. Indeed, neither the insurer’s expert nor the insured’s expert could say whether a general contractor would be necessary to repair the cabinets. Moreover, the insurer’s expert commented that he had had similar projects in the past but had never been hired by a general contractor to work as a subcontractor, indicating a general contractor may not have been necessary. On appeal, the insured makes several arguments for why a general contractor was necessary,' but the insured ought to have made these arguments to the jury because “[w]hen material facts are in dispute, then it is the function of the jury to resolve *18 them.” Decarlo v. Griffin, 827 So.2d 348, 350 (Fla. 4th DCA 2002).
Next, the trial court abused its discretion when it struck all of the insurer’s witnesses because they were not general contractors. As discussed, there remained disputed issues of fact as to whether cabinets could be repaired and whether a general contractor was reasonably necessary. The insurer should have been permitted to present relevant testimony directed at these issues and others. See § 90.401, Fla. Stat.; Watkins v. State, 121 Fla. 58, 163 So. 292, 293 (Fla.1935) (“In civil as well as in criminal cases, facts which on principles of sound logic tend to sustain or impeach a pertinent hypothesis of an issue are to be deemed relevant and admitted in evidence, unless proscribed by some positive prohibition of law.”). Striking these witnesses effectively prevented the insurer from litigating relevant issues in this case.
Finally, prohibiting inquiry into the second leak was also an abuse of discretion. Although the insured’s expert claimed the second leak did not impact his opinion, the jury, not the trial court, should have had the opportunity to decide whether the insured’s expert was to be believed. See Berry v. CSX Transp., Inc., 709 So.2d 552, 571 (Fla. 1st DCA 1998) (“Trial courts should not arrogate the jury’s role in ‘evaluating the evidence and the credibility of expert witnesses’ by ‘simply cho[o]s[ing] sides in [the] battle of the experts.’ ”) (quoting Christophersen v. Allied-Signal Corp., 902 F.2d 362, 366 (5th Cir.1990)). Thus, the insurer should have been given the opportunity to present facts that may weigh on the reliability and credibility the opinion of the insured’s expert. See Dep’t of Agric. & Consumer Servs. v. Bogorff, 35 So.3d 84, 88 (Fla. 4th DCA 2010).
In conclusion, we reverse and remand for a new trial and for proceedings consistent with this opinion.

Reversed and remanded.

FORST, J., and COLBATH, JEFFREY, Associate Judge, concur.

. We express no opinion as to whether repairing the cabinets was factually possible in this case.