[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14162

Non-Argument Calendar

_____

MONT CLAIRE AT PELICAN MARSH
CONDOMINIUM ASSOCIATION, INC.,

Plaintiff-Appellee,

*versus*

EMPIRE INDEMNITY INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:19-cv-00601-SPC-KCD

_____

Before WILSON, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

A hurricane damaged a collection of condominium buildings, and the policyholder sued to recover under its insurance policy. The insurer and the policyholder submitted the claim to an appraisal panel to value the loss. The insurer now looks to this Court to save it from the undesired consequences of the binding appraisal agreement it chose to enter. It will find no such relief. The insurer argues that the district court erred in entering summary judgment and confirming the appraisal award because the policyholder's complaint did not state a claim for breach of the appraisal agreement and the policyholder's recovery should have been limited to the amount actually spent on repairs. We agree with the district court and affirm.

## I.

This case is an insurance dispute that arises out of Hurricane Irma in 2017. Mont Claire held an insurance policy from Empire Indemnity Insurance Company for its condominium buildings in Florida. After Irma damaged those structures, Mont Claire submitted a claim. Empire paid only $32,568.23. Mont Claire demanded appraisal, as provided for under the policy. Empire refused, and Mont Claire filed suit in state court. Mont Claire brought both a petition to compel appraisal and a claim for breach of contract. Empire removed the case to the Middle District of Florida, invoking the court's diversity jurisdiction.

While this litigious drama unfolded, Mont Claire at least partially repaired the structures. The record at summary judgment indicated—and Empire does not contest—that Mont Claire had spent at least $2,413,143.60 to repair the roofs and other damaged parts of the property. Mont Claire had not yet repaired all of the damaged windows and doors. Additionally, an ongoing dispute existed about whether Mont Claire owed any further outstanding sums for repairs already completed.

Eventually, the parties entered an appraisal agreement. They submitted the claim to an appraisal panel to determine both the "actual cash value" and the "replacement cost value" of the damaged structures. The panel returned a total loss estimate of $8,171,994.86 on a replacement cost value basis and $6,599,810.67 on an actual cash value basis. The insurance policy limited Mont Claire's recovery under a replacement cost value basis to the amount actually spent on repairs, but it contained no such provision for actual cash value awards.

For strategic reasons, Mont Claire abandoned its claim to replacement cost value and elected to recover the actual cash value. It moved for summary judgment to enforce the appraisal award on that basis. Empire countered with a partial summary judgment motion of its own. It argued that Mont Claire's recovery for the roofs was limited to the $2,413,143.60 actually spent on repairs, minus the deductible and prior payment, and that the panel may have included losses outside the scope of the coverage. The district court granted Mont Claire's motion for summary judgment

and confirmation of the appraisal award, ordered Empire to pay $6,148,949.12 (the appraised actual cash value minus the deductible and prior payment), and denied Empire's motion for partial summary judgment. The court subsequently amended the judgment to include $1,033,942.75 in prejudgment interest.

## II.

This Court reviews "a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in its favor." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1172 (11th Cir. 2024). Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When hearing cases under our diversity jurisdiction, we apply state substantive law as "it appears the state's highest court would." *Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001) (quotation omitted). Because it is a question of law, we review the interpretation of insurance contracts de novo. *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774 (11th Cir. 2000).

## III.

On appeal, Empire raises two primary sets of arguments. Empire first contends that the district court could not enforce the appraisal award because the appraisal occurred after Mont Claire had filed its complaint and the court should have allowed Empire to raise "line-item" challenges to the appraisal panel's award.

Empire next argues that the award should be greatly reduced because the amount actually spent on repairs should have capped Mont Claire's recovery for at least the structures already repaired. Because the terms of the policy and Florida insurance law support the district court's decision, we affirm the entry of summary judgment in favor of Mont Claire and the confirmation of the appraisal award.

## A.

Empire asserts that the district court erred by entering summary judgment and enforcing the appraisal award because, it says, Mont Claire did not—and could not—state a claim for breach of contract for failure to pay the appraised sum. Because Empire did not breach the insurance contract by refusing to comply with the appraisal panel's award until after Mont Claire filed its complaint, so the argument goes, it failed to plead this particular breach of contract. According to Empire, it could not have breached the insurance contract by failing to cover Mont Claire's loss until the appraisal award issued—after the complaint was filed. Empire latches onto language in the insurance contract that made loss payments payable after (as relevant here) the filing of an appraisal award.

*First*, as the district court held, Empire likely waived this argument. In its complaint, Mont Claire alleged that Empire breached the insurance contract both by refusing to engage in appraisal and by "refusing to provide sufficient compensation for damages to the Property as due under the Policy." When entering

into the appraisal agreement, Empire agreed to "waive any defenses and arguments that appraisal and/or a lawsuit is premature and/or unripe." Empire argues that it did not waive this argument because it exempted defenses for future breaches of contract from the waiver in the appraisal agreement and Empire did not breach the contract by failing to pay the appraisal until after the appraisal award issued. That conclusion, however, rests on the assumption that Mont Claire's allegation in the complaint that Empire breached by failing to pay sufficient compensation was unripe to begin with. And Empire waived that argument when it agreed to enter into binding appraisal.

*Second*, even if Empire did not waive this argument, it does not succeed on the merits. Mont Claire stated a valid cause of action for breach of the insurance contract resulting from Empire's failure to pay. The complaint alleged in the breach of contract count that Empire refused to compensate Mont Claire for the hurricane damage. Moreover, it supported this legal conclusion with factual allegations that it had an active insurance policy with Empire, its loss (based on information from its adjuster and various consultants) was over $16 million, and Empire's refusal to pay more than $32,568.23 had left it "uncompensated." This sufficed to state a breach of contract claim. *See Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017).

Empire's refusal to abide by the appraisal award did not create an entirely new claim. Rather, the appraisal award liquidated the amount that Empire owed for the breach of contract

that Mont Claire had already pleaded. As Florida courts hold, the "appraisal process confirmed" that the insurer "had wrongly denied paying" the policyholder benefits owed under the policy. *Synergy Contracting Grp., Inc. v. Fednat Ins. Co.*, 332 So. 3d 62, 67 (Fla. Dist. Ct. App. 2021). "Quantifying that amount served to expedite resolution of the substantive litigation," and so "it did not wipe away" the insurer's "prior denial like a tabula rasa." *Id.* And, contrary to Empire's interpretation, Florida caselaw tying a plaintiff's right to recover to the facts at the time that the complaint was filed concerns whether the lawsuit was filed "prematurely," not the amount that the plaintiff is entitled to. *See Lee v. Harbour Pres., LLC*, 795 So. 2d 181, 182 (Fla. Dist. Ct. App. 2001).

Mont Claire pleaded that Empire both refused to engage in appraisal and to pay what it owed under the contract. During the litigation, the appraisal award determined the value of the loss, resolving what Mont Claire was owed for this failure to pay. Empire's appeal to an unpublished case concerning the availability of attorney's fees under a Florida fee-shifting statute does not change this outcome. *See J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 769 F. App'x 698, 706 (11th Cir. 2019) (unpublished). We decline to adopt Empire's desired hypertechnical approach, which would require a policyholder who sued for a refusal both to engage in appraisal and to pay what was owed under an insurance contract to then have to amend its complaint or file a new suit in order to

enforce the award issued by the appraisal panel that was agreed to as part of the litigation.[1]

Likewise, Empire is incorrect that the district court should have allowed it to bring "line-item" challenges to the appraisal award. Even according to Empire's construction of Florida law, if "a court decides that coverage exists, the dollar value agreed upon under the appraisal process will be binding upon both parties." *Liberty Am. Ins. Co. v. Kennedy*, 890 So. 2d 539, 541 (Fla. Dist. Ct. App. 2005) (quoting *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1287–88 (Fla. 1996)). The district court found that coverage existed as a matter of law. Empire wishes that it had been given the chance to argue, in particular, that the panel must have incorrectly assigned some damages to physical loss categories rather than to "Ordinance or Law" coverage, simply because Empire disagrees with the panel assigning $0 to the "Ordinance/Law" column of the appraisal form. This, however, is not an argument that coverage did not exist. *See id.* Rather, it is a challenge to the appraisal panel's loss determination and the accuracy of the panel's process, which is not permitted because Empire agreed to a binding appraisal. *See id.*

Empire's argument that the district court lacked sufficient evidence to confirm the appraisal award at summary judgment also fails. Empire insists that because the appraisal award does not include the exact wording that the appraisers considered "only

---

[1] The district court noted that it likely would have allowed Mont Claire to amend its complaint, but that this "useless exercise is unnecessary."

direct physical loss of, or damage to, the covered property," Mont Claire failed to establish that the policy covered the appraised loss. This contention is more than a stretch.

*First*, Empire jointly wrote and submitted the appraisal form to the panel. Empire agreed that "the amount of the loss shall be set by such appraisal award" and instructed the panel to determine that amount "[n]otwithstanding any provision" of the policy or applicable law.

*Second,* the panel unequivocally stated that it "duly, conscientiously, and impartially performed the duties within" its "appointment pursuant to the appraisal clause of the subject policy" and "conducted an assessment of the amount of the loss sustained due to or related to hurricane Irma." That analysis included "determinations as to the" amount attributable to "ordinance or law." The form confirms that the "award does not include losses associated with causes excluded under the policy." The panel's award provides sufficient evidence that it followed the appraisal agreement and the policy to support the district court's entry of summary judgment. Magic words are not required to enforce the result of a process Empire agreed to. Why Empire is "not bound by their agreement of submission and this award that followed we cannot comprehend from anything exhibited in the record." *Hanover Fire Ins. Co. v. Lewis*, 10 So. 297, 302 (Fla. 1891).

## B.

Empire's second set of arguments fairs no better. Empire argues that the actual cost spent on repairs should limit Mont

Claire's recovery, at least for those portions already fixed. At issue here is whether "replacement cost value" or "actual cash value" governs. That question is critical because the policy explicitly limits "replacement cost value" to the amount actually spent on repairs but contains no such limitation for "actual cash value."[2]

Empire is right that the policy allowed it to choose between—as relevant here—paying the "value of lost or damaged property" or paying "the cost of repairing or replacing" that property. The policy required Empire to "give notice of" its "intentions within 30 days" after receiving a proof of loss. Nothing indicates that Empire did so. Instead, Empire entered into the appraisal agreement, which specifically asked the panel to determine the "replacement cost value" and "actual cash value," and included an appraisal form with those columns.

Between those two options, the policy leaves the choice to Mont Claire. Normally, the policyholder would elect replacement cost coverage (which is why Mont Claire purchased this optional coverage), because replacement cost value is defined as actual cash value without deduction for depreciation. *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013). But here, Empire wants to use replacement cost value because the optional coverage that gives Mont Claire access to replacement cost basis also caps replacement cost awards at the amount actually spent on repairs.

_____

[2] Empire concedes that the policy does not limit actual cash value "to the amount actually spent to repair or replace the damaged property," as it does for replacement cost value.

It contains no similar provision for actual cash value, which Florida law defines as "fair market value or replacement cost minus normal depreciation." *Id.* (alteration adopted and quotation omitted).

Empire argues that Mont Claire chose replacement cost coverage because it put "$16,927,609.70" in the "full cost of repair or replacement" blank on its proof of loss form. We again disagree. *First*, it is not clear that Mont Claire had a real alternative on this form, which was prepared by Empire. Empire's proof of loss form restricts the "[a]ctual cash value" blank to entering the difference between the amounts entered in the "full cost of repair or replacement" and "[a]pplicable depreciation" blanks.

*Second*, the policy contains no restrictions for when the policyholder can elect to proceed under an actual cash value basis. Nor does it provide any details about how the selection is made. Empire points to no provisions or authority indicating that a selection implied on the proof of loss form is binding and irrevocable. The district court concluded that the policy leaves this choice up to Mont Claire's discretion, "without limitation."

*Third*, Empire itself seemed to believe that the choice remained open. Empire agreed that the panel should determine "the amount of the loss" on both a "replacement cost value" and an "actual cash value" basis, "[n]otwithstanding any provision" in the insurance policy or "any legal authority that would provide otherwise." The appraisal form that Empire and Mont Claire submitted to the panel contained columns for replacement cost value and actual cash value, as well as depreciation. It is strange,

to say the least, that Empire would agree to request both a replacement cost value and an actual cash value figure if Mont Claire had already irrevocably selected replacement cost value.

*Fourth*, this conclusion is not altered by Empire's argument that a "windfall" will result if Mont Claire recovers more than it has spent on repairs. Whether that is factually true is disputed; Mont Claire had not paid for all window and door repairs and may not have yet compensated its general contractor when the most recent cost figures were submitted. But even if so, it is the policy language and the way Empire handled the claim, not the district court, that led to that result.

★    ★    ★

The insurance policy that Empire issued, its handling of the claim, and the binding appraisal agreement it entered obliged it to cover Mont Claire's loss on an actual cash value basis. It is bound by its contracts, and cannot now escape their enforcement. We therefore **AFFIRM** the district court's order entering summary judgment in favor of Mont Claire and confirming the appraisal award.