# Third District Court of Appeal

## State of Florida

Opinion filed May 12, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1282
Lower Tribunal No. 18-14139
_____

**People's Trust Insurance Company,**
Appellant,

vs.

**Pedro R. Ramos Santos, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Cole, Scott & Kissane, P.A., and Mark D. Tinker (Tampa), for appellant.

Shahady & Wurtenberger, P.A., and John J. Shahady (Fort Lauderdale); Duboff Law Firm, and Kenneth R. Duboff, for appellees.

Before SCALES, HENDON and LOBREE, JJ.

PER CURIAM.

In this first-party insurance action, People's Trust Insurance Company, the defendant below, appeals entry of final judgment in favor of the plaintiffs below, Pedro Ramos Santos and Yanela Arteaga Simon ("Insureds"), on Insureds' breach of contract claim. The trial court entered the final judgment following the court's grant of Insureds' motion for summary judgment that claimed People's Trust had violated sections 627.7011, 627.70131, and 627.7142 of the Florida Statutes. Because we conclude under the particular facts and circumstances of this case that People's Trust did not violate the statutes in question, and that, in light of People's Trust's exercise of its right to repair option, the judgment is inherently inconsistent with the record, we reverse the trial court's April 18, 2019 summary judgment order and the May 30, 2019 final judgment and remand for further proceedings.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. Insureds' Insurance Policy

People's Trust issued a homeowners' policy covering Insureds' Hialeah residence for the policy period between September 20, 2016 and September 20, 2017. The policy insured the dwelling at replacement cost and included a $6,800 hurricane deductible.

In return for a premium discount, the subject policy contained a Preferred Contractor Endorsement (the "endorsement"). The endorsement

2

gave People's Trust the option, following a covered loss, to elect to have its own contractor, Rapid Response Team, LLC, repair Insureds' property in lieu of issuing a loss payment that would otherwise be due under the policy. The endorsement required People's Trust, within thirty days of its inspection of a reported loss, to notify Insureds in writing of its election of the right to repair. The endorsement also contained an appraisal clause that was applicable where People's Trust opted to exercise its right to repair:

Where "we" elect to repair:

1. If "you" and "we fail to agree on the amount of loss, which includes the scope of repairs, either may demand an appraisal as to the amount of loss and the scope of repairs. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, "you" or "we" may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss and scope of repairs. If the appraisers submit a written report of an agreement to "us," the amount of loss and scope of repairs agreed upon will be the amount of loss and scope of repairs. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and the scope of repairs. Each party will pay its own appraiser, and bear the other expenses of the appraisal and umpire equally.

This was the only appraisal clause contained within the policy.

*B. Insureds' Policy Claim*

3

After Insureds' home suffered damage during Hurricane Irma, Insureds, through legal counsel, notified People's Trust of the loss. People's Trust's adjuster inspected the home and prepared an Estimate and Scope of Repairs. The adjuster's report estimated that the cost of repairing the damage to Insureds' home – at replacement cost value – was $3,059.80.

On October 27, 2017,[1] People's Trust sent Insureds' attorney a letter notifying Insureds that their loss was covered and electing "to use its preferred contractor, Rapid Response Team, LLC . . . to repair [Insureds'] property to its pre-loss condition by making repairs to all covered damages . . . ." The October 27, 2017 letter further stated that because People's Trust's $3,059.80 repair estimate did not exceed Insureds' $6,800 hurricane deductible, the repairs would not commence until the parties either reached an agreement as to the amount of the loss in excess of the deductible "or the amount of loss, including the scope of repairs[,] has been determined by an appraisal panel to exceed your deductible amount of $6,800." To this end, the letter notified Insureds that if they disagreed with the scope of repairs set forth in the Estimate and Scope of Repairs, Insureds, within sixty days, should provide People's Trust with a sworn proof of loss "which provides the

---

[1] Insureds claim they did not receive the October 27, 2017 letter until November 21, 2017.

4

details of what you believe the proper scope to be, including, but not limited to, a scope prepared by you or your own behalf." Finally, the October 27, 2017 letter informed Insureds that (i) "should you disagree with our assessment of the cost and scope of repairs, your policy provides an appraisal mechanism for resolving that disagreement," and (ii) "[i]f after participating in appraisal, it is determined by that process that your damages do in fact exceed your deductible amount, we will proceed with repairs at that time using [Rapid Response Team, LLC], including making arrangements with you for the payment of your deductible." Attached to the October 27, 2017 letter were People's Trust's Estimate of Scope of Repairs, a copy of the endorsement, and a work authorization form.

On March 27, 2018, Insureds' counsel sent People's Trust a letter that stated, in its entirety:

Dear [People's Trust claims adjuster]:

Enclosed please find the following documentation:

1. Executed Work Authorization
2. Executed *Sworn Proof of Loss* with supporting estimate from [Insureds' public adjuster]

The executed work authorization form had several provisions struck through, including the provision requiring Insureds to pay the $6,800 deductible prior to the commencement of the repairs. The report of Insureds' public adjuster

5

estimated that the cost of repairing the damages to Insureds' home – at replacement cost value – was $48,153.78.

*C. Insureds' Complaint for Damages*

On May 1, 2018, Insureds filed the instant breach of contract action against People's Trust, seeking damages for People's Trust's failure to make a loss payment after People's Trust acknowledged that their loss was covered. Specifically, the complaint alleged that: (i) under the "terms of the policy" and section 627.7011(3)(a) of the Florida Statutes, People's Trust was "obligated to initially pay at least the actual cash value[2] of the insured loss, less the policy deductible;" (ii) People's Trust had "made a payment of [actual cash value] in an amount that was unilaterally based upon its own adjuster's estimate as to the scope of loss constituting the total amount due for [actual cash value];" and (iii) after Insureds provided People's Trust with their sworn proof of loss and a repair estimate notifying People's Trust of "substantial differences in the respective parties' evaluations as to the scope of the loss constituting the amount of [actual cash value] that was required to initially be paid," People's Trust breached the policy and section 627.7011(3)(a) by "refus[ing] to pay any more [actual cash value] than the

---

[2] "Actual cash value" is generally defined as replacement cost minus depreciation. Trinidad v. Fla. Peninsula Ins. Co., 121 So. 3d 433, 438 (Fla. 2013).

amount of its own adjuster's unilateral estimate . . . ." Importantly, the complaint does not reference the subject endorsement, People's Trust's exercise of its right to repair under the endorsement, or the endorsement's appraisal clause that either party may invoke once People's Trust exercises its right to repair.[3]

### D. People's Trust's Response and Ensuing Appraisal

After being served with the complaint, People's Trust filed a motion to dismiss Insureds' complaint and, in the alternative, to compel an appraisal. As to its motion to dismiss, People's Trust argued that dismissal was appropriate because (i) Insureds had breached the policy provisions by suing People's Trust rather than invoking their right to demand an appraisal to resolve the parties' dispute over the amount of loss and scope of repairs, and (ii) Insureds had filed the lawsuit before People's Trust could demand an appraisal. In the alternative, People's Trust requested the trial court to order Insureds to participate in the appraisal process, to sign an unredacted work authorization form, and, should the appraisal award exceed the $6,800 hurricane deductible, to pay the deductible before Rapid Response Team, LLC commenced the repairs.

---

[3] In fact, despite People's Trust having exercised its right to repair in lieu of making a loss payment, Insureds' complaint erroneously alleged that People's Trust had actually made an inadequate loss payment to Insureds.

Insureds opposed both aspects of People's Trust's motion, claiming that People's Trust had failed to timely invoke the appraisal process after People's Trust first learned (upon receipt of Insureds' counsels' March 27, 2018 letter and attachments) of Insureds' disagreement over the amount of loss and scope of repairs. The trial court granted People's Trust's motion to compel an appraisal, but reserved ruling on People's Trust's motion to dismiss. The matter went to appraisal and, on December 12, 2018, the appraisal panel entered an appraisal award for $25,204.70.

*E. Insureds' Summary Judgment Motion and Resulting Proceedings*

After the appraisal panel entered its appraisal award, Insureds then moved for summary judgment, asserting entitlement to money damages for People's Trust's alleged breach of contract premised upon People's Trust's purported violations of sections 627.7011, 627.70131 and 627.7142 of the Florida Statutes. Namely, Insureds argued that (i) People's Trust had violated section 627.7011(3)(a) by failing to make an initial loss payment to Insureds after acknowledging in its October 27, 2017 letter that Insureds' loss was covered,[4] and (ii) People's Trust had violated sections 627.7142

---

[4] Although Insureds did not specifically reference section 627.7011 in their summary judgment motion, the statute was clearly the basis underlying this argument. See Assad v. Mendell, 550 So. 2d 52, 54 (Fla. 3d DCA 1989) ("The function of a motion for summary judgment is to determine if the

8

(insurer's duty to provide policyholders with the Homeowner Claims Bill of Rights) and 627.70131(1)(a) (insurer's duty to acknowledge communications regarding claims) by failing to respond to Insureds' counsel's March 27, 2018 correspondence that notified People's Trust of their disagreement over the amount of loss and scope of repairs.[5] According to Insureds, these claimed statutory violations, combined with People's Trust's purported failure to timely invoke its right to appraisal prior to Insureds filing the lawsuit, constituted a policy breach entitling Insureds to judgment for damages on their breach of contract action. Insureds further argued that the measure of damages should be $18,404.70 – a figure arrived at by subtracting the subject policy's $6,800 hurricane deductible from the $25,204.70 appraisal award. As with their complaint, Insureds' summary judgment motion makes no mention of the subject endorsement or People's Trust's exercise of its right to repair thereunder.

---

respective parties can produce sufficient evidence in support of the operative issues made in the pleadings.").

[5] Although Insureds' complaint neither cited to sections 627.70131 and 627.7142 nor contained any allegations with respect to People's Trust's purported violation of these statutes, People's Trust did not object to Insureds' summary judgment motion on the basis that Insureds had sought relief beyond the issues framed by the pleadings. See Reddy v. Zurita, 172 So. 3d 481, 484 (Fla. 5th DCA 2015). Consequently, People's Trust consented to having these issues adjudicated.  Id. at 484, n.5.

9

People's Trust opposed Insureds' summary judgment motion, arguing that it did not violate section 627.7011(3)(a) because its estimate of the covered damages fell below the $6,800 hurricane deductible and, in its October 27, 2017 letter, People's Trust had exercised its right to repair. People's Trust argued further that it did not violate section 627.7142 and that any alleged violation of section 627.70131 was not a breach of the policy and, therefore, could not form the basis of a breach of contract action. Finally, People's Trust argued that, because it had exercised its right to repair, invoked the appraisal process, and the appraisal award established the amount of loss and the scope of the repairs, the trial court "should compel the completion of the repair process."

After holding two hearings on Insureds' summary judgment motion, the trial court entered an April 18, 2019 order granting summary judgment in favor of Insureds "for the reasons stated on the record at both hearings," and directing Insureds "to file a motion for final judgment setting forth the money damages set forth in the appraisal award less deductible." Neither hearing was transcribed by a court reporter.

On May 30, 2019, the trial court entered final summary judgment in favor of Insureds awarding Insureds $18,404.70 in damages, plus prejudgment interest. Without further explication, the trial court determined

that "[People's Trust's] proffered evidence failed to rebut [Insureds'] evidence – including that it failed to indemnify [Insureds] as required by the contract policy of insurance."

People's Trust timely appealed the trial court's April 19, 2019 summary judgment order and the May 30, 2019 final judgment.

## II.    ANALYSIS[6]

Insureds' summary judgment motion asserted that People's Trust breached the insurance contract – thus, entitling Insureds to a final judgment for repair damages – by violating three different statutory provisions. While we have no transcripts of the summary judgment hearings, it appears the trial court agreed with Insureds on each basis. We address each in turn, and

---

[6] "We review the trial court's orders granting final summary judgment *de novo*. Similarly, a trial court's decision construing a contract presents an issue of law subject to *de novo* review." Siegel v. Tower Hill Signature Ins. Co., 225 So. 3d 974, 976 (Fla. 3d DCA 2017) (citation omitted). We likewise review the trial court's interpretation of statutes *de novo*. Health Options, Inc. v. Palmetto Pathology Servs., P.A., 983 So. 2d 608, 613 (Fla. 3d DCA 2008). The lack of hearing transcripts does not preclude our review. See Seal Prods. v. Mansfield, 705 So. 2d 973, 975 (Fla. 3d DCA 1998) ("Where the appeal is from a summary judgment, the appellant must bring up the summary judgment record, that is, the motion, supporting and opposing papers, and other matters of record which were pertinent to the summary judgment motion. Those are the portions of the record essential to a determination whether summary judgment was properly entered. . . . Consequently, it is not necessary to procure a transcript of the summary judgment hearing, . . . although it is permissible and often helpful to do so.").

then generally address the propriety in this case of awarding Insureds a judgment for repair damages, in light of People's Trust's election of the policy's right to repair option.

### A. Section 627.7011 of the Florida Statutes

First, Insureds argued below that People's Trust breached the insurance contract by violating section 627.7011, governing loss payments for dwellings insured at replacement cost.

Where, as here, the dwelling is insured for replacement cost, section 627.7011(3)(a) requires the insurer to "initially pay at least the actual cash value of the insured loss, less any applicable deductible."[7] This section, though, is inapplicable when the insurance policy contains, and the insurer validly exercises, a right to repair clause. See § 627.7011(5)(e) ("This section does not . . . [p]rohibit an insurer from exercising its right to repair damaged property in compliance with its policy and s. 627.702(7)."); Prepared Ins. Co. v. Gal, 209 So. 3d 14, 17 (Fla. 4th DCA 2016) ("A 'replacement cost policy' is a policy where the insurer agrees to compensate for a loss without taking into account depreciation. Such a policy does not prohibit *repairing* the

---

[7] "The insurer shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred." § 627.7011(3)(a), Fla. Stat. (2017).

damaged property. In fact, . . . [section 627.7011(6)(b)] expressly provide[s] that an insurer may limit its liability to the 'reasonable and necessary cost *to repair* the damaged . . . property.'") (citations omitted). The subject endorsement gives People's Trust the option to have its contractor repair the covered loss in lieu of issuing a loss payment to Insureds,[8] and section 627.7011(5)(e) provides that section 627.7011(3)(a)'s requirement – that the insurer initially pay its insured the actual cash value of the loss – is inapplicable when the insurer has elected the policy's repair option.

In this case, the record reflects that People's Trust's October 27, 2017 letter plainly and unambiguously exercised its right to repair the covered loss under the endorsement. Hence, we are compelled to reverse the trial court's summary judgment to the extent it is premised upon People's Trust's violation of section 627.7011.

*B. Section 627.70131 of the Florida Statutes*

Next, Insureds argued below that, by not responding within fourteen days to Insureds' counsel's March 27, 2018 letter, People's Trust breached

---

[8] "The new contract formed between the insurer's preferred and designated contractor under such an endorsement and the insured has been termed a 'Drew agreement,' a reference to Drew v. Mobile USA Ins. Co., 920 So. 2d 832 (Fla. 4th DCA 2006)." People's Tr. Ins. Co. v. Franco, 305 So. 3d 579, 582 (Fla. 3d DCA 2020).

the insurance contract by violating section 627.70131(1)(a). This subsection

reads, in its entirety, as follows:

> Upon an insurer's receiving a communication with respect to a claim, the insurer shall, within 14 calendar days, review and acknowledge receipt of such communication unless payment is made within that period of time or unless the failure to acknowledge is caused by factors beyond the control of the insurer which reasonably prevent such acknowledgment. If the acknowledgment is not in writing, a notification indicating acknowledgment shall be made in the insurer's claim file and dated. A communication made to or by an agent of an insurer with respect to a claim shall constitute communication to or by the insurer.

§ 627.70131(1)(a), Fla. Stat. (2018). This subsection, though, "shall not

apply to claimants *represented by counsel* beyond those communications

necessary to provide *forms and instructions*." § 627.70131(1)(c), Fla. Stat.

(2018) (emphasis added). Further, "[i]f the communication constitutes a

*notification of a claim*, . . . the acknowledgment shall provide necessary

*claims forms, and instructions*, including an appropriate telephone number."

§ 627.70131(2), Fla. Stat. (2018) (emphasis added). Thus, where the insured

is represented by an attorney, the statute requires only that the insurer

acknowledge receipt of those communications that notify the insurer that its

insured is making a claim under the policy. In such instances, the insurer's

acknowledgment of the claim notification need only provide the insured's

attorney with the necessary claim forms and instructions.

In this case, Insureds' counsel notified People's Trust of Insureds' loss on September 10, 2017. This communication was clearly a "notification of a claim" under section 627.70131, triggering People's Trust's subsequent investigation of Insureds' claim. Insureds, however, made no argument below with respect to People's Trust's acknowledgement of their September 10, 2017 claim notification. Instead, Insureds argued that their counsel's March 27, 2018 follow-up communication to People's Trust – sent in response to People's Trust's October 27, 2017 letter acknowledging that their loss was covered, but below the policy's hurricane deductible, and exercising the right to repair – also constitutes a "notification of a claim" under the statute. We disagree.

Insureds' counsel's March 27, 2018 communication merely provided People's Trust with additional information regarding a claim of which People's Trust had already been notified and for which it had already acknowledged coverage. The communication served only to establish a dispute between the parties over the amount of loss and scope of repairs of this covered claim; it did not constitute a "notification of claim" for the purposes section 627.70131. Hence, we are compelled to reverse the trial court's summary judgment to the extent that it was based upon Insureds'

erroneous interpretation and application of section 627.70131 to the facts of this case.

*C. Section 627.7142 of the Florida Statutes*

Also, Insureds argued below that People's Trust breached the insurance contract by violating section 627.7142, governing an insurer's obligation to distribute the "Homeowner Claims Bill of Rights."

The statute requires insurers of residential property to "provide a Homeowner Claims Bills of Rights to a policyholder within 14 days after receiving an initial communication with respect to a claim . . . ." § 627.7142, Fla. Stat. (2018). Among other things, this document must inform claimants that when they submit a sworn proof of loss to their insurer, they have the right to make a written request that the insurer timely confirm whether their claim is covered, denied or being investigated:

YOU HAVE THE RIGHT TO:

. . . .

*2. Upon written request*, receive from your insurance company within 30 days after you have submitted a complete proof-of-loss statement to your insurance company, confirmation that your claim is covered in full, partially covered, or denied, or receive a written statement that your claim is being investigated.

Id. (emphasis added).

16

In this case, Insureds conceded in their motion for summary judgment that the subject policy "contains no specific deadline for [People's Trust's] response to a proof of loss." Insureds argued below that People's Trust violated section 627.7142 by not responding within thirty days of its receipt of Insureds' sworn proof of loss that accompanied Insureds' attorney's March 27, 2018 follow up communication. We disagree.

First, the statute expressly provides that "[t]he Homeowner Claims Bill of Rights does not create a civil cause of action by any individual policyholder . . . against an insurer." Id. Nor, as conceded by Insureds, is the statutory provision incorporated into the subject policy. Hence, a violation of the statute cannot form the basis for a breach of contract action.

Second, no statutory violation occurred here because Insureds' counsel's March 27, 2018 correspondence contained no written request for confirmation as to the status of the insurance claim, as required by the statute's plain language. Rather, the letter merely stated that Insureds' counsel had enclosed an executed work authorization form and a completed sworn proof of loss form. Moreover, by virtue of its October 27, 2017 letter to Insureds' counsel, People's Trust had already informed Insureds that their claim was covered, but that the damages did not exceed their $6,800 hurricane deductible.

Therefore, we are compelled to reverse the trial court's summary judgment to the extent that it was based upon Insureds' erroneous interpretation and application of section 627.7142 to the facts of this case.

### D. Inconsistency, Occasioned by People's Trust Exercise of its Repair Option, between the Money Judgment for Repairs and the Allegations in Insureds' Complaint

Finally, because we have reversed all three grounds upon which Insureds' summary judgment motion was premised, in order to provide some limited guidance on remand, we note one additional ground that compels reversal.

The policy's appraisal provision – contained within the endorsement – is available as a dispute mechanism to the parties *only* if People's Trust elects its right to repair option *in lieu of making a loss payment*. Insureds' complaint, however, contains no allegations, and the challenged orders do not contain any findings,[9] that People's Trust improperly exercised the right to repair option or that the endorsement is otherwise invalid. Quite the opposite: the trial court ordered an appraisal; Insureds did not appeal the

_____

[9] Insureds concede that the trial court entered summary judgment with "no reservation" regarding People's Trust's exercise of its right to repair under the policy endorsement. The final judgment also makes no mention of the endorsement or People's Trust's exercise of the repair option contained therein.

18

appraisal order;[10] the appraisal occurred; and the trial court entered a repair damage judgment for Insureds that *relied* upon the appraisal award to calculate the judgment amount.

In light of our conclusions in sections II(A),(B), and (C), *supra*, in order for Insureds to obtain money damages for repairs, Insureds, under the particular facts and circumstances of this case, must plead and prove – and the trial court must find – either that People's Trust improperly exercised the right to repair or that the endorsement is otherwise invalid, and that People's Trust breached the insurance contract. See, e.g., Diaz v. Fla. Peninsula Ins. Co., 204 So. 3d 460, 462 (Fla. 4th DCA 2016); Robinson v. Fla. Peninsula Ins. Co., 178 So. 3d 947, 948 (Fla. 4th DCA 2015). Because Insureds' complaint contains no such allegations,[11] we also reverse the summary judgment in light of the fundamental inconsistency – caused by the invocation of appraisal as part of the policy's right to repair option – between

---

[10] A trial court's interlocutory order compelling appraisal is an appealable, nonfinal order. See Fla. R. App. P. 9.130(a)(3)(C)(iv).

[11] Obviously, on remand, we do not know whether: (i) Insureds will seek leave to file an amended complaint; (ii) People's Trust will seek a ruling on its previously filed motion to dismiss upon which the trial court reserved ruling; (iii) the parties will proceed to allow Rapid Response Team, LLC to perform the repairs pursuant to the appraisal award; or (iv) the parties will pursue other courses of action. Such further proceedings will be left to the sound discretion of the trial court.

the trial court's award of repair damages to Insureds and the breach of contract action pled by Insureds. See Brumer v. HCA Health Servs. of Fla., Inc., 662 So. 2d 1385, 1387 (Fla. 4th DCA 1995) (reversing a summary judgment that had been entered by the trial court because the pleadings were inadequate, and remanding with instructions that the plaintiff be given leave to amend to state a viable cause of action).

## D.    CONCLUSION

Based upon the summary judgment record, we conclude that, contrary to the assertions in Insureds' summary judgment motion (and implicit conclusions by the trial court), People's Trust did not violate sections 627.7011, 627.70131, or 627.7142 of the Florida Statutes. Further, because, pursuant to the endorsement in the subject policy, People's Trust exercised its right to repair Insureds' damages – and Insureds have not alleged any infirmity in People's Trust's election of the endorsement or otherwise challenged the endorsement's validity – we are compelled to reverse the final judgment awarding Insureds money damages because the remedy awarded is inherently inconsistent with the record. We, therefore, reverse the trial court's April 18, 2019 summary judgment order and the May 30, 2019 final summary judgment and remand for further proceedings.

Reversed and remanded.